IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**Case Number: 21-cv-61179**

**FANNY B. MILLSTEIN,**

        **Plaintiff,**

**v.**

**ERIC HOLTZ, MARSHAL SEEMAN,**
**NATIONAL SENIOR INSURANCE, INC.,**
**a Florida corporation d/b/a Seeman Holtz,**
**PARA LONGEVITY HOLDINGS VI, LLC,**
**a Georgia limited liability company,**
**EMERALD ASSETS HOLDINGS, LLC, a**
**Georgia limited liability company,**
**PARA LONGEVITY 2014-5, LLC, a**
**Georgia limited liability company,**
**PARA PARA LONGEVITY 2015-5, LLC, a**
**Georgia limited liability company,**
**PARA LONGEVITY 2016-3, LLC, a**
**Georgia limited liability company,**
**PARA LONGEVITY 2016-5, LLC, a**
**Georgia limited liability company,**
**PARA LONGEVITY 2018-3, LLC, a**
**Georgia limited liability company,**
**PARA LONGEVITY 2018-5, LLC, a**
**Georgia limited liability company,**
**EMERALD ASSETS 2018, LLC, a Georgia**
**limited liability company, INTEGRITY**
**ASSETS, LLC, a Georgia limited liability**
**company,**

        **Defendants.**

_____/

## COMPLAINT

Plaintiff Fanny B. Millstein, individually and behalf of all others similarly situated ( herein

referred to as the "Plaintiff"), hereby sues Defendants, ERIC HOLTZ ("Mr. Holtz"), MARSHAL

SEEMAN ("Mr. Seeman"), NATIONAL SENIOR INSURANCE, INC. d/b/a Seeman Holtz

("Seeman Holtz"), (Mr. Seeman, Mr. Holtz and Seeman Holtz, are referred to herein collectively as the "Seeman Holtz Defendants"), PARA LONGEVITY HOLDINGS VI, LLC ("PL Holdings"), EMERALD ASSETS HOLDINGS, LLC ("EA Holdings") (Mr. Seeman, Mr. Holtz, Seeman Holtz, PL Holdings and EA Holdings are referred to herein as "Seeman Holtz Defendants"), PARA LONGEVITY 2014-5, LLC ("PL 2014-5"), PARA LONGEVITY 2015-5, LLC ("PL 2015-5"), PARA LONGEVITY 2016-3, LLC ("PL 2016-3"), PARA LONGEVITY 2016-5, LLC ("PL 2016-5"), PARA LONGEVITY 2018-3, LLC ("PL 2018-3"), PARA LONGEVITY 2018-5, LLC ("PL 2018-5"), EMERALD ASSETS 2018, LLC ("EA-2018") and INTEGRITY ASSETS, LLC ("Integrity") (PL 2014-5, PL 2015-5, PL 2016-3, PL 2016-5, PL 2018-3, PL 2018-5, EA-2018 and Integrity are referred to herein collectively as the "PL Entities" and individually as "PL Entity") (the Seeman Holtz Defendants and PL Entities are referred to herein collectively as "Defendants"), and states as follows:

## Introduction

1.      Seeman Holtz is an insurance agency owned by Messrs. Seeman and Holtz. Over the last decade, the Seeman Holtz Defendants marketed and sold securities in the form of promissory notes purportedly collateralized by life insurance policies issued to third parties (the "Notes"). In promoting and selling these Notes to investors, primarily seniors, the Seeman Holtz Defendants called them "longevity linked assets." In other words, the Seeman Holtz Defendants claimed to invest in life insurance policies which would pay to the holders of the Notes a substantial premium upon the death of the insured. However, Seeman Holtz was not registered to sell securities like the Notes. Nor were its agents registered as financial advisors or properly licensed to sell the Notes. The Notes themselves were not properly registered as securities, nor did they qualify for exemption from registration under the applicable state

securities statutes.  These facts alone entitle every investor to rescission of their investment as a matter of law.

2.      The Seeman Holtz Defendants fraudulently represented to investors in every entity they created that the underlying third-party insurance policy assets were held by a collateral agent to protect those assets.  In reality, no collateral agent existed and Seeman Holtz comingled all of the policies in the name of, and for the benefit of, Seeman Holtz Property and Casualty, LLC.  This case arises from Plaintiff's and the members of the Class' investments in the Notes, which were at all times controlled by one or more of Seeman and/or Holtz and the Seeman Holtz "Family of Companies".

3.      Defendant Seeman Holtz markets itself as part of an integrated and intertwined "Family of Companies."  On the "Our Team" webpage of the www.seemanholtz.com website, Defendant Seeman Holtz states: "[o]ver many years, the Seeman Holtz Family of Companies has grown into a national trusted network, but it all started with two college roommates, decades earlier. Marshal Seeman and Eric Holtz co-founded everything our team is today.  Our proactive team focus is on comprehensive risk management and comprehensive financial advice."

4.      On the www.seemanholtz.com/our-team webpage, Defendant Seeman Holtz promotes its "Family of Companies" as including both Seeman Holtz and Seeman Holtz Property & Casualty, LLC which is described as "one of the largest and fastest growing agencies in the nation, with over 50 acquisitions in just two years and plans to continue expansion."

5.      Plaintiff Fanny B. Millstein invested herself and with her husband, Gerald J. Millstein in two of the Notes.  As alleged herein, Plaintiff was promised that her and her husband's assets would be liquid and that they would be repaid upon maturity.  However, when the time came for repaying the Notes that the Plaintiff purchased, Seeman Holtz told

her that the firm was undergoing financial problems.  The effects have been devastating for Plaintiff.  At age 76, Fanny Millstein should not be forced to contemplate that her and her husband's life savings invested with Seeman Holtz have vanished.

6.      Seeman Holtz is not a registered broker-dealer with the State of Florida, U.S. Securities and Exchange Commission or the Financial Industry Regulatory Authority. Messrs. Seeman and Holtz manage and control Seeman Holtz, are the managing members of the PL Entities, and are the control persons under the securities law because they are responsible for the sale and registration of the Notes.  At all times material herein, Messrs. Seeman and Holtz owned, operated and controlled every aspect of the creation, sale and management of the Notes.

7.      Using a network of unregistered financial advisors or dealers, the Seeman Holtz Defendants sold the Notes to investors, including Plaintiff and other members of the Class, by telling those investors that the Notes were safe and secure and would be collateralized by a portfolio of life insurance policies which would provide safety of principal and substantial returns.

8.      Accordingly, in connection with the sale of the Notes to Plaintiff and the members of the Class, Messrs. Seeman and Holtz managed and controlled (a) the selling dealer, Seeman Holtz; (b) the network of unregistered agents who acted as "financial advisors," as described by Seeman Holtz; and (c) the investments through their management and control of the Notes.

9.      Defendants also made uniform material misrepresentations in connection with the sale of the Notes to Plaintiff and the members of the Class.  As discussed in more detail below, the offering documents for the Notes represented that the PL Entity would grant a

security interest in all assets of the PL Entity, which would be managed by a collateral agent, Coral Gables Title and Escrow, Inc. ("CGTE" or the "Collateral Agent").

10.     Upon information and belief, these representations were materially false and misleading because (a) CGTE was administratively dissolved by the State of Florida in September 2015; and (b) the PL Entities either have no collateral or are so undercollateralized to render meaningless the representations that the Notes were secured.

11.     Additionally, the PL Entities paid Seeman Holtz a commission for selling the Notes, and similar notes to third parties, which it attempted to disguise as a "service fee" (even though there was no "service" for the "fee" other than selling the Notes).

12.     The Notes belonging to Plaintiff and the Class have matured, including specifically the following:

| Noteholder | Issuer | Matured |
|---|---|---|
| **Gerald J. Millstein and Fanny B. Millstein** | PL 2015-3 | Jan. 28, 2019 |
| **Fanny B. Millstein** | PL 2016-3 | Jan. 13, 2020 |

13.     Seeman Holtz consistently represented to investors that it could not redeem these Notes because of a lack of liquidity, claiming that Seeman Holtz needed additional time and was on the cusp of recapitalizing its affiliated property and casualty business in order to obtain the necessary liquidity for the redemptions. That has never happened.

14.     Plaintiff has brought this action on behalf of herself and the members of the Class against Defendants to recover (1) all outstanding interest on the Notes; (2) the principal investments in the Notes that have matured; and (3) rescission of the Notes.

**Parties**

15.     Plaintiff Fanny B. Millstein is 76 years old and *sui juris*.  Plaintiff Fanny B.

Millstein is a citizen of the State of Florida residing in Broward County, Florida

16.     Defendant Eric Holtz ("Mr. Holtz" or "Holtz") is an individual over the age of eighteen and *sui juris*.  Mr. Holtz is a citizen of the State of Florida residing in Broward County, Florida.

17.     Defendant Marshall Seeman ("Mr. Seeman" or "Seeman") is an individual over the age of eighteen and *sui juris.* Mr. Seeman is a citizen of the State of Florida.  During the relevant time period, Mr. Seeman conducted business in Broward County, Florida.

18.     Defendant National Senior Insurance, Inc. d/b/a Seeman Holtz ("Seeman Holtz") is a Florida corporation with its principal place of business in Florida. During the relevant time period, Seeman Holtz conducted business in Broward County, Florida.

19.     Defendant Para Longevity Holdings VI, LLC ("PL Holdings") is a Georgia limited liability company.  Messrs. Seeman and Holtz are the sole members of PL Holdings. Because Messrs. Seeman and Holtz are citizens of the State of Florida and it is a Georgia company, PL Holdings is a citizen of the States of Georgia and Florida.

20.     Defendant Emerald Assets Holdings, LLC ("EA Holdings") is a Georgia limited liability company.  Messrs. Seeman and Holtz are the sole members of EA Holdings. Because Messrs. Seeman and Holtz are citizens of the State of Florida and it is a Georgia company, EA Holdings is a citizen of the States of Georgia and Florida

21.     Defendant Para Longevity 2014-5, LLC ("PL 2014-5") is a Georgia limited liability company whose sole member is PL Holdings.  Because the ultimate members of PL 2014-5 are Messrs. Seeman and Holtz and it is a Georgia company, PL 2014-5 is a citizen of Georgia and Florida.

22.     Defendant Para Longevity 2015-5, LLC ("PL 2015-5") is a Georgia limited

liability company whose sole member is PL Holdings.  Because the ultimate members of PL 2015-5 are Messrs. Seeman and Holtz and it is a Georgia company, PL 2015-5 is a citizen of Georgia and Florida.

23.    Defendant Para Longevity 2016-3, LLC ("PL 2016-3") is a Georgia limited liability company whose sole member is PL Holdings.  Because the ultimate members of PL 2016-3 are Messrs. Seeman and Holtz and it is a Georgia company, PL 2016-3 is a citizen of Georgia and Florida.

24.    Defendant Para Longevity 2016-5, LLC ("PL 2016-5") is a Georgia limited liability company whose sole member is PL Holdings.  Because the ultimate members of PL 2016-5 are Messrs. Seeman and Holtz and it is a Georgia company, PL 2016-5 is a citizen of Georgia and Florida.

25.    Defendant Para Longevity 2018-3, LLC ("PL 2018-3") is a Georgia limited liability company whose sole member is PL Holdings.  Because the ultimate members of PL 2018-3 are Messrs. Seeman and Holtz and it is a Georgia company, PL 2018-3 is a citizen of Georgia and Florida.

26.    Defendant Para Longevity 2018-5, LLC ("PL 2018-5") is a Georgia limited liability company whose sole member is PL Holdings.  Because the ultimate members of PL 2018-5 are Messrs. Seeman and Holtz and it is a Georgia company, PL 2018-5 is a citizen of Georgia and Florida.

27.    Defendant Emerald Assets 2018, LLC ("EA-2018") is a Georgia limited liability company whose sole member is EA Holdings.  Because the ultimate members of EA-2018 are Messrs. Seeman and Holtz and it is a Georgia company, EA-2018 is a citizen of Georgia and Florida.

28.     Defendant Integrity Assets, LLC ("Integrity") is a Georgia limited liability company whose sole member is PL Holdings.  Because the ultimate members of Integrity are Messrs. Seeman and Holtz and it is a Georgia company, Integrity is a citizen of Georgia and Florida.

### Jurisdiction and Venue

29.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") (codified at 28 U.S.C. §§ 1332(d)(2)).  At least one member of the Class is a citizen of a different state than at least one defendant, there are more than one hundred members of the Class, and the aggregate amount in controversy exceeds five-million dollars ($5,000,000.00).

30.     This Court has personal jurisdiction over all Defendants because they are all Florida citizens and because they continuously and systematically operate, conduct, engage in, and carry on business in Florida.  The Court also has specific personal jurisdiction over the Defendants because the Defendants' wrongful conduct occurred in this District.  Accordingly, the Defendants are subject to Florida's long arm jurisdiction under Fla. Stat. § 48.193.

31.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants transact business, engaged in misconduct, and/or may be found in this District.  Venue is also proper here because at all times relevant hereto, Plaintiff resided in the Southern District of Florida, and a substantial portion of the practices complained of herein occurred in the Southern District of Florida.

32.     All conditions precedent to this action have occurred, been performed, or have been waived.

33.     Venue is proper in the Fort Lauderdale Division because it is the county in

which: (1) the underlying controversy arose; (2) Defendants solicited and sold the Notes to Plaintiff; (3) the alleged wrongdoing occurred; and (4) Defendants conduct business.

**General Allegations**

**I.      The Notes**

34.      The Defendants, utilizing materially uniform offering materials containing materially uniform misrepresentations and omissions, issued, solicited, offered, and sold Plaintiff and the members of the Class the Notes.  These included specifically the following promissory notes sold to Plaintiff:

| Noteholder | Issuer | Issue Date | Face Value | Maturity |
|---|---|---|---|---|
| **Gerald J. Millstein and Fanny B. Millstein** | PL 2015-3 | Jan. 28, 2016 | $125,000.00 | Jan. 28, 2019 |
| **Fanny B. Millstein** | PL 2016-3 | Jan. 13, 2017 | $101,037.10 | Jan. 13, 2020 |

35.      The material terms of the transaction documents for the Notes were nearly identical, aside from identifying different amounts invested, the duration of the Notes, and the dates of issuance and maturity.

**The Sales of the PL Entity Notes to Plaintiff**

36.      In each instance, Seeman Holtz, from offices in the State of Florida, solicited Plaintiff and the members of the Class to invest in the Notes on behalf of the PL Entities and made these solicitations from within the State of Florida.

37.      Seeman Holtz and Messrs. Seeman and Holtz were "dealers" as defined under Fla. Stat. § 517.021(6)(a)(1) as persons engaged, either for all or part of her or his time, directly or indirectly, as a broker or principal in the business of offering, buying selling, or otherwise dealing or trading in securities issued by another person.

38.      Neither Seeman Holtz, Mr. Seeman nor Mr. Holtz were registered with the

State of Florida as a dealer.

39.     Messrs. Seeman and Holtz are, and were, directors and/or officers of Seeman Holtz and PL Holdings, which is the Managing Member of the PL Entities.

40.     Based on their positions with PL Holdings, Messrs. Seeman and Holtz held the power to control the PL Entities.

41.     Seeman Holtz contacted Plaintiff and the members of the Class to invest in the Notes, as indicated above.

42.     Seeman Holtz provided Plaintiff and the members of the Class with copies of the Private Placement Memorandums ("PPMs") for each Note they purchased, as well as a Note Purchase Agreement for each Note they purchased.

43.     Plaintiff and the members of the Class returned each of the completed Note Purchase Agreements to Seeman Holtz in Florida, and Seeman Holtz, in turn, transmitted the completed Note Purchase Agreements to the respective PL Entities in Florida.

**II.     Misrepresentations Regarding the Collateral Agent in the PL Entities' Notes**

44.     Each PL Entity represented in a materially identical fashion in each of the PPMs that the Notes would be secured by the assets of the respective PL Entity and that the PL Entity would grant a security interest in all of the assets of that PL Entity.

45.     According to the PPMs, the collateral agent, CGTE, which was owned and operated by Jeffrey Baxter, Esq., a licensed Florida attorney and agent of Chicago Title Insurance Company, would manage the security interest.

46.     However, in September 2015, the State of Florida administratively dissolved CGTE.  The last time CGTE filed an annual report with the State of Florida was in September 2014.  Thus, the PL Entity Notes sold after September 2015 failed to disclose that CGTE no longer

existed.

47.     Pursuant to Fla. Stat. § 617.1421(3), "[a] corporation administratively dissolved continues its corporate existence but may not conduct any affairs except that necessary to wind up and liquidate its affairs . . . and adopt a plan of distribution of assets . . . ."

48.     Thus, when Defendants sold the Notes to Plaintiff after September 2015, they had no collateral agent to manage the collateral and ensure the Notes were secured, despite their representations to the contrary.

49.     When considering whether to invest in the Notes, a reasonable investor would consider the absence of a collateral agent important and a material misrepresentation in the offering documents used to sell the Notes.

50.     CGTE's status with the State of Florida continued as "Inactive."  Yet, on February 16, 2021, after over 5 years of inactivity and, in light of the apparent inability of Seeman Holtz to repay its debts, Jeffrey L. Baxter, Esq., applied to the State of Florida to reinstate CGTE as an active Florida corporation.  On February 22, 2021, CGTE was reinstated as a Florida corporation but had to change its name to Coral Gables Collateral Agency, Inc., since its prior name was no longer available.

51.     Defendants have been unwilling or unable to provide Noteholders, including Plaintiff and the members of the Class, with an accounting of the collateral, the value of the collateral, or any other information regarding the value of the Notes.

III.     <u>**The Missing Collateral & Inability to Pay Interest or Repay Debts**</u>

52.     Upon information and belief, the Class member Noteholders have no secured interest in the collateral for the Notes, based upon the absence of any perfected finance statement from a review of UCC-1 filings in the State of Georgia and the State of Florida and admissions

made by Defendants.

53.     On or about May 20, 2021, a public announcement was made that Seeman Holtz intends to hold a public sale of 100% of SHPC Holdings I, LLC's interests in Seeman Holtz Property and Casualty, LLC, representing a majority of the outstanding interests in Seeman Holtz Property and Casualty, LLC, and will be held on June 14, 2021. *See* https://www.rockcreekfa.com/seeman-holtz-property-casualty.

54.     Seeman Holtz is by its own admission facing extensive liquidity problems.  As alleged above, in 2020 and through the present, Seeman Holtz repeatedly claimed that it was about to close a large transaction that would recapitalize the company to provide it with the liquidity needed to redeem all of the Noteholders' requests.[1]  Seeman Holtz never explained ***why*** it would need to recapitalize or ***why*** any of the Seeman Holtz Family of Companies would need to recapitalize to repay the debts of other business entities, like the PL Entities, even if they were under common control through Messrs. Seeman and Holtz.

55.     None of the Defendants ever discussed any post-maturity efforts that were required to protect the assets of the respective PL Entities.  For example, in the text of the PPM for the Para Longevity 2018-5, the Seeman Holtz Defendants caused the PL Entities to represent:

> The Company anticipates that by maturity of the outstanding Notes sold in this offering, its portfolio of acquired assets will have been liquidated, or policies matured to the extent necessary to realize net proceeds sufficient to satisfy the Notes.  No assurance, however, can be given that the Company will be able to liquidate its assets in a timely fashion or on favorable terms in the time and amounts necessary to satisfy the Notes by maturity.  **If any assets of the Company have not been liquidated by maturity of the Notes and the Company therefore has insufficient assets to fully satisfy the Notes by their maturity date, such assets (plus reasonable reserves to fund such assets through liquidation as determined by the Managing Member) will be placed**

---

[1]     Mr. Holtz made the same types of excuses to the daughter of another aggrieved investor. *See Barbara Wohlwend v. Marshal Seeman, et al.*, Complaint, ¶¶ 48-50, Case No. 50-2021-CA-004978XXXX-MB-AH (Fla. 15th Cir. Apr. 16, 2021).

**in a liquidating trust and the Company will continue its efforts to liquidate those assets in a timely manner and distribute net proceeds to satisfy the Notes**.

(Emphasis added.)

56.     Based on this language, any assets acquired by the PL Entities that were not liquidated by maturity should have been placed in a liquidating trust.  Neither the Collateral Agent, the PL Entities, PL Holdings, Seeman Holtz, Mr. Seeman nor Mr. Holtz has presented any documentation regarding the status of the liquidating trust, including the identity of any liquidating trustee, and there do not appear to be any of either.  Instead, this representation, made in a materially uniform manner to all the members of the Class, was false.

57.     Plaintiff's and the Class' Notes have matured and have been in default for over a year.  In that time, the Collateral Agent has not commenced any action to secure any collateral, and the PL Entities have failed to liquidate their assets to repay their obligations.  As no liquidating agent or Collateral Agent has been established, the Class member Noteholders have no way of learning whether the investments hold any remaining value because it is unknown whether any collateral is still collectable or even exists.

58.     The absence of any information regarding the liquidating trust or the identity of any person with authority to direct the liquidation strongly suggests that there is no collateral, because, otherwise, the liquidating trustee would be engaging in an orderly distribution of the assets.

59.     Moreover, the above-quoted representation that the respective PL Entity anticipated liquidity of the assets held as collateral by maturity of the Notes could not have had any reasonable basis at the time it was made.  The PL Entities are facing widespread defaults.  As for Plaintiff's Notes, after eighteen (18) and thirty (30) months in default, then at least some of the underlying collateral should have been liquidated or policies matured to have made partial redemptions to

Plaintiff.

60.    Indeed, because Seeman Holtz cannot redeem the Notes unless it admittedly recapitalizes its property and casualty business, the collateral supposedly held by the PL Entities was far more illiquid than represented in the PPMs.  Because of the long length of time without any redemption, Defendants' representation that the collateral would be liquid by maturity was false and misleading.

## IV.    The "Hidden" Compensation and Undisclosed Commissions Paid to the Representative

61.    Seeman Holtz was paid a commission or other compensation in connection with each of the Notes that they sold to Plaintiff and the members of the Class.

62.    Specifically, Seeman Holtz was paid a "service fee" in connection with each Note that it sold. Despite being characterized as a service fee, however, Seeman Holtz was not required to provide any services in exchange for the fee other than offering and selling the Notes. Indeed, the only services provided appear to have been fielding emails and calls from aggrieved investors searching for where their funds actually were. Ultimately, the amount of the purported service fee that was paid was determined based on the total value of the PL Entities' notes that Seeman Holtz sold—including the total value of the Notes that Seeman Holtz sold to Plaintiff and the members of the Class.

63.    Messrs. Seeman and Holtz were personally involved in structuring, approving, and facilitating the byzantine manner in which the compensation was paid in connection with the sales of the Notes so that it was hidden behind a labyrinth of opaque, intra-company backchannels (thereby making it difficult to trace back to the PL Entities).

## VI. Class Action Allegations

64.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and/or (b)(3), Plaintiff

bring this class action on behalf of herself and all others similarly situated.  The proposed class ("Class") is defined as follows:

> **All persons who purchased or held a beneficial interest in one or more of the Notes within the applicable limitations period. Excluded from the Class are Defendants, any entity in which any Defendant had a controlling interest, Defendants' officers, directors, legal representatives, successors, and assigns, and Defendants' immediate family members.**

65.     <u>Numerosity.</u>  There are over one hundred members of the Class, and the Class is so numerous that separate joinder of each member is impracticable.

66.     <u>Typicality</u>.     Plaintiff's claims are typical of the claims of the Class insofar as Plaintiff purchased and held a beneficial interest in the unregistered Notes that were collateralized by the same or similar "longevity linked assets" and had the same or similar material terms, which were marketed and sold through the unregistered agents of the Seeman Holtz Defendants, and Plaintiff were therefore harmed by the same wrongful activity as other Class members.

67.     <u>Adequacy</u>.     As investors in the Notes, Plaintiff will fairly and adequately protect the interests of all Class members, and do not have any claims that are antagonistic to those of the Class.  Plaintiff has retained competent counsel experienced in class action litigation, including securities litigation.  Plaintiff's counsel will fairly, adequately, and vigorously protect the interests of the Class.

68.     <u>Commonality.</u>     There are questions of law and fact that are common to the claims of the Plaintiff and the Class members, including, but not limited to, the following:

a.   Whether Defendants violated Fla. Stat. § 517.07(1) in the recommendation and sale of the unregistered Notes issued by the PL Entities to Plaintiff and the Class;

b.   Whether Defendants violated Fla. Stat. § 517.12(1) by selling securities, *i.e.,* the Notes, to Plaintiff and the Class through agents who were not registered to sell securities pursuant to federal and state law;

c.  Whether, in connection with the rendering of investment advice or in connection with the offer, sale, or purchase of the Notes, Defendants violated Fla. Stat. § 517.301 by misrepresenting to Plaintiff that there was collateral to secure repayment of the Notes, when there was no secured interest in collateral and no collateral agent existed;

d.  Whether, in connection with the rendering of investment advice or in connection with the offer, sale, or purchase of the Notes, Defendants violated Fla. Stat. § 517.301 by, misrepresenting to Plaintiff that the Notes were safe investments that were consistent with an investment objective of safety of principal, when they were highly risky;

e.  Whether the Seeman Holtz Defendants breached their fiduciary duties owed to Plaintiff in the recommendation and sale of the Notes to Plaintiff;

f.  Whether Defendants violated Florida RICO; and

g.  Whether Plaintiff and the Class were damaged by the Defendants' misconduct.

**Fed. R. Civ. P. 23(b)(2)**

69.  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final equitable, declaratory, or injunctive relief is appropriate with respect to the Class as a whole.

**Fed. R. Civ. P. 23(b)(3)**

A.  <u>Predominance</u>

70.  The questions of law or fact common to the claims of the Plaintiff and the Class predominate over any questions of law or fact affecting only individual members of the Class.  All claims by Plaintiff and the unnamed Class members are based on the Defendants' fraudulent and unlawful conduct with regard to the sale of the Notes.

71.  Common issues predominate when, as here, liability can be determined on a Class-wide basis.

72.  As a result, when determining whether common questions predominate, courts

focus on the liability issue, and if the liability issue is common to the class, as it is in this case, common questions will be held to predominate over individual questions.

73.     Because all claims by Plaintiff and the unnamed Class members are based on the same misconduct by the Defendants, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.

        B.    <u>Superiority</u>

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The burden and expense of managing many actions arising from Defendants' fraud and violations of law, and the potential for inconsistent results, counsel in favor of a class action — which presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## LEGAL CLAIMS

### Count I
### *Violation of Fla. Stat. § 517.07(1)*
### (against PL Entities, PL Holdings, EA Holdings, Mr. Seeman, Mr. Holtz and Seeman Holtz)

75.      Plaintiff incorporates Paragraphs 1-74 as if stated fully herein.

76.      Section 517.07(1), Fla. Stat., provides that it is unlawful and a violation for any person to sell a security within the State of Florida unless the security is exempt under Fla. Stat. § 517.051, is sold in a transaction exempt under Fla. Stat. § 517.061, is a federally covered security, or is registered pursuant to Ch. 517, Fla. Stat.

77.      Section 517.211(1), Fla. Stat., provides that sales of securities in violation of Fla. Stat. § 517.07 may be rescinded by the purchaser and that "[e]ach person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security."  Fla. Stat. § 517.211.

78.      Each of the Notes is a security pursuant to Fla. Stat. § 517.021(22)(a).

79.      The Notes were not:

        a.      exempt from registration under Fla. Stat. § 517.051;

        b.      a federal covered security;

        c.      registered with the OFR; or

        d.      sold in a transaction exempt under Fla. Stat. § 517.061.

80.      The PL Entities, as issuers, sold the Notes to Plaintiff and the members of the Class from offices within the State of Florida.

81.      Seeman Holtz was an agent of the PL Entities in the sale of the Notes and

18

personally participated or aided in the sale of the Notes to Plaintiff and the members of the Class by, among other things, (a) soliciting Plaintiff and the members of the Class to purchase the Notes; (b) utilizing Seeman Holtz's offices, telephone numbers and email addresses to sell the Notes; and (c) receiving a commission or compensation for the sales.

82.     Mr. Seeman was the Chief Executive Officer and an agent of the PL Entities in the sale of the Notes and personally participated or aided in making the sales of the Notes to Plaintiff and the members of the Class as evidenced by, among other things, the fact that he signed the Notes' Purchase Agreements and Notes.  In addition, Mr. Seeman was personally involved in structuring, approving, and facilitating the byzantine manner in which the compensation paid to Seeman Holtz in connection with the sales of the Notes was hidden behind a labyrinth of opaque, intra-company back-channels and ultimately paid by Seeman Holtz.

83.     Mr. Holtz is the Executive Vice President and Secretary and an agent of each of the PL Entities in the sale of the Notes and personally participated or aided in making each of the sales of the Notes to Plaintiff and the members of the Class as evidenced by, among other things, the fact that he was personally involved in structuring, approving, and facilitating the byzantine manner in which the compensation paid to Seeman Holtz in connection with the sales of the Notes was hidden behind a labyrinth of opaque, intra-company backchannels and ultimately paid by Seeman Holtz.

84.     PL Holdings was the sole member of the PL Entities other than EA-2018 and personally participated or aided in the sale of the Notes to Plaintiff and the members of the Class as evidenced by, among other things, the fact that it, through its managing member, Mr. Seeman, signed the Notes' Purchase Agreements and Notes.

85.     EA Holdings was the sole member of EA-2018 and personally participated or aided in making the sale of the EA-2018 Notes to members of the Class as evidenced by, among other things, the fact that it, through its managing member, Mr. Seeman, signed the Notes' Purchase Agreements and Notes.

86.     Because the Notes were not registered with the OFR, were not federally covered securities, were not exempt and were not sold in an exempt transaction, the sales of the Notes violated Fla. Stat. § 517.07 and may be rescinded under Fla. Stat. § 517.211(1) and (3).

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demands judgment for rescission of the sale of the Notes against PL Entities, PL Holdings, Mr. Seeman, Mr. Holtz, and Seeman Holtz, jointly and severally; together with prejudgment interest, pursuant to Fla. Stat. § 517.211(3); reasonable attorneys' fees pursuant to Fla. Stat. § 517.211 (6); costs; post-judgment interest; and any and all further relief deemed just, equitable, and proper.

### Count II
*Violation of Fla. Stat. § 517.12(1)*
**(against PL Entities, PL Holdings, Mr. Seeman, Mr. Holtz and Seeman Holtz)**

87.     Plaintiff incorporates Paragraphs 1-86 as if stated fully herein.

88.     Section 517.211(1), Fla. Stat., provides that sales of securities in violation of Fla. Stat. § 517.12(1) may be rescinded by the purchaser and that "[e]ach person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security."

89.     Section 517.12(1), Fla. Stat., provides that "[n]o dealer, associated person, or issuer

of securities shall sell or offer for sale any securities in or from offices in this state, . . . by mail or otherwise, unless the person has been registered with the office [Florida Office of Financial Regulation] pursuant to the provisions of this section.

90.    Section 517.021(6)(a)(1) defines a "Dealer" as including:

1.    Any person, other than an associated person registered under this chapter, who engages, either for all or part of her or his time, directly or indirectly, as broker or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

2.    Any issuer who through persons directly compensated or controlled by the issuer engages, either for all or part of her or his time, directly or indirectly, in the business of offering or selling securities which are issued or are proposed to be issued by the issuer.

91.    Section 517.021(15), Fla. Stat., also provides that "[a]ny person who acts as a promoter for and on behalf of a corporation, trust, or unincorporated association or partnership of any kind to be formed shall be deemed an issuer," and Fla. Stat. § 517.021(19) defines "Promoter" as:

a.    Any person who, acting alone or in conjunction with one or more other person, directly or indirectly takes the initiative of founding and organizing the business or enterprise of an issuer.

b.    Any person who, in connection with the founding or organizing of the business or enterprise of an issuer, directly or indirectly receives in consideration of services or property, or both services and property, 10 percent or more of any class of securities of the issuer or 10 percent or more of the proceeds from the sale of any class of securities.   However, a person who receives such securities or proceeds either solely as underwriting commissions or solely in connection with property shall not be deemed a promoter if such person does not otherwise take part in founding and organizing the enterprise.

92.    Each of the Notes issued by the PL Entities is a security pursuant to Fla. Stat. § 517.021(22)(a).

93.     The Notes sold to Plaintiff and the members of the Class were sold in or from offices in the State of Florida.

94.     Seeman Holtz was a dealer because it was engaged, either for all or part of its time, directly or indirectly, in brokering the sale of the Notes issued by the PL Entities to the Plaintiff.

95.     Seeman Holtz was never registered with the OFR as a dealer.

96.     Seeman Holtz personally participated or aided in making the sale of the PL Entities, including the Notes to the Plaintiff and the members of the Class.

97.     Each of the PL Entities is an "issuer" of its respective Notes pursuant to Fla. Stat. § 517.021(15) ("'Issuer' means any person who proposes to issue, has issued, or shall hereafter issue any security").

98.     The PL Entities were each a dealer because the PL Entities each directly compensated Seeman Holtz through which the PL Entities each engaged, either for all or part of its time, directly or indirectly, in the business of offering or selling securities where were issued or were proposed to be issued by the respective PL Entities.

99.     The PL Entities were also dealers because the PL Entities each directly controlled Seeman Holtz.   The PL Entities through Messrs. Seeman and Holtz, possessed, directly or indirectly, the power to direct or cause the direction of the management or policies of Seeman Holtz, whether through the ownership of voting securities, by contract, or otherwise.

100.    PL Holdings is the Managing Member of each of the PL Entities other than EA-2018 and personally participated or aided in making each of the sales of the Notes to the Plaintiff and the members of the Class as evidenced by, among other things, the fact that PL Holdings signed the Notes and Note Purchase Agreements.

101.    EA Holdings is the Managing Member of EA-2018 and personally participated

or aided in making each of the sales of the EA-2018 Notes to the members of the Class as evidenced by, among other things, the fact that EA Holdings signed the Notes and Note Purchase Agreements.

102.    Mr. Seeman is the Chief Executive Officer and an agent of each of the PL Entities and personally participated or aided in making each of the sales of the Notes to the Plaintiff as evidenced by, among other things, the fact that he signed each of the Note Purchase Agreements and each of the Notes.  In addition, Mr. Seeman was personally involved in structuring, approving, and facilitating the byzantine manner in which the compensation paid to Seeman Holtz in connection with the sales of the Notes to the Plaintiff.

103.    Mr. Holtz is the Executive Vice President and Secretary and an agent of each of the PL Entities and personally materially participated or aided in making each of the sales of the Notes to the Plaintiff as evidenced by, among other things, the fact that he was personally involved in structuring, approving, and facilitating the byzantine manner in which the compensation paid to Seeman Holtz in connection with the sales of the Notes to the Plaintiff.

104.    Messrs. Seeman and Holtz were issuers of each of the respective PL Entities because they acted as promoters of the PL Entities by (a) directly or indirectly taking the initiative of founding and organizing each of the PL Entities; and/or (b) directly or indirectly, as the managing members of PL Holdings, receiving in consideration of services or property, or both services and property 10 percent or more of any class of securities of PL Entities.

105.    As statutorily defined issuers, Messrs. Seeman and Holtz were the persons making, or personally participated or aided in making the sale, of the Notes to the Plaintiff and the members of the Class.

106.    Because Seeman Holtz was not registered with the OFR, the sales of the Notes

to the Plaintiff were made in violation of Fla. Stat. § 517.12(1), and therefore may be rescinded by the Plaintiff and the members of the Class pursuant to Fla. Stat. § 517.211(1).

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demands judgment for rescission of the sale of the Notes against the PL Entities, PL Holdings, Mr. Seeman, Mr. Holtz, and Seeman Holtz, jointly and severally; together with prejudgment interest, pursuant to Fla. Stat. § 517.211(3); reasonable attorneys' fees pursuant to Fla. Stat. § 517.211 (6); costs; post-judgment interest; and any and all further relief deemed just, equitable, and proper.

**Count III**
*Violation of Fla. Stat. § 517.301*
**(against the PL Entities, PL Holdings, Mr. Seeman, Mr. Holtz and Seeman Holtz)**

107.   Plaintiff incorporates Paragraphs 1-106 as if stated fully herein.

108.   It is a violation of Florida law to do any of the following in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security:

   (1) Employ any device, scheme, or artifice to defraud;

   (2) Obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

   (3) Engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

Fla. Stat. § 517.301(1)(a).

109.   The Notes issued by the PL Entities are securities pursuant to Fla. Stat. § 517.021(22)(a).

110.   The Notes issued by the PL Entities were each offered for sale and sold in or from

24

offices in the State of Florida and within the State of Florida.

111.    In connection with the sale of the Notes to the Plaintiff and the members of the Class, the PL Entities and Seeman Holtz obtained money or property from the Plaintiff and members of the Class by means of untrue statements of material fact and the omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including the following:

> a.   There was collateral to secure repayment of the Notes, when there was no secured interest in collateral; and

> b.   Representing that the Notes were safe investments that were consistent with an investment objective of safety of principal, when they were highly risky.

112.    Additionally, the PL Entities failed to disclose that they would pay commissions to Seeman Holtz for selling the Notes to the Plaintiff and members of the Class.

113.    PL Holdings is the Managing Member of each of the PL Entities other than EA-2018 and personally participated or aided in making each of the sales of the Notes to the Plaintiff and the members of the Class as evidenced by, among other things, the fact that PL Holdings signed the Notes and Note Purchase Agreements.

114.    EA Holdings is the Managing Member of EA-2018 and personally participated or aided in making each of the sales of the EA-2018 Notes to the members of the Class as evidenced by, among other things, the fact that EA Holdings signed the Notes and Note Purchase Agreements.

115.    Mr. Seeman is the Chief Executive Officer and an agent of each of the PL Entities and personally participated or aided in making each of the sales of the Notes as evidenced by, among other things, the fact that he signed each of the PL Entities' Notes and Note Purchase Agreements.  In addition, Mr. Seeman was personally involved in structuring, approving and

facilitating the byzantine manner in which the compensation was paid to Seeman Holtz in connection with the sales of the PL Entities' Notes.

116.    Mr. Holtz is the Executive Vice President, Secretary, and an agent of each of the PL Entities and personally participated or aided in making each of the sales of the Notes as evidence by, among other things, the fact that he was personally involved in structuring, approving and facilitating the byzantine manner in which the compensation was paid to Seeman Holtz in connection with the sales of the Notes.

117.    Seeman Holtz was the entity that made the sale of the Notes to the Plaintiff and members of the Class by soliciting them to invest in those Notes.

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demands judgment for rescission of the sale of the Notes against PL Entities, PL Holdings, Mr. Seeman, Mr. Holtz, and Seeman Holtz, jointly and severally; together with prejudgment interest, pursuant to Fla. Stat. § 517.211(3); reasonable attorneys' fees pursuant to Fla. Stat. § 517.211 (6); costs; post-judgment interest; and any and all further relief deemed just, equitable, and proper.

**Count IV**
*Breach of Fiduciary Duty*
**(against Mr. Seeman, Mr. Holtz and Seeman Holtz)**

118.     Plaintiff incorporates Paragraphs 1-117 as if stated fully herein.

119.     Defendants Mr. Seeman, Mr. Holtz and Seeman Holtz owed a fiduciary duty to Plaintiff and the members of the Class.

120.     Plaintiff and the members of the Class reposed their trust and confidence in Defendants.

121.     The Seeman Holtz Defendants undertook such trust and assumed a duty to advise, counsel, and protect Plaintiff and the members of the Class.

122.     The Seeman Holtz Defendants breached their fiduciary duty to Plaintiff and the members of the Class.

123.     The Seeman Holtz Defendants' conduct caused Plaintiff and the members of the Class to incur damages.

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demands compensatory damages against the Seeman Holtz Defendants reasonably believed to exceed $5,000,000, plus accrued and accruing interest, prejudgment interest pursuant to Fla. Stat. § 55.03, costs and for such further relief as is fair and just.

**Count V**
*Negligence*
**(against Messrs. Seeman and Holtz and Seeman Holtz)**

124.     Plaintiff incorporates Paragraphs 1-123 as if stated fully herein.

125.     The Seeman Holtz Defendants owed duties to Plaintiff and the members of the Class to recommend only suitable investments, and to deal with Plaintiff and the members of

27

the Class in an honest and ethical manner.

126.    The Seeman Holtz Defendants breached their duties to Plaintiff and the members of the Class.

127.    The Seeman Holtz Defendants' breach of their duties was the direct and proximate cause of Plaintiff's and the Class members' damages.

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demands negligence compensatory damages reasonably believed to exceed $5,000,000 plus accrued and accruing interest, prejudgment interest pursuant to Fla. Stat. § 55.03, costs and for such further relief as is fair and just.

<u>Count VI</u>
*VIOLATION OF FLORIDA'S CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT,*
*FLA. STAT.  §§ 772.103(1), (3)-(4), 772.104(1), 777.011, and 777.03(1)(a) ("RICO")*
**(against Defendants Seeman, Holtz, Seeman Holtz, PL Holdings, and PL Entities)**

128.    Plaintiff incorporates Paragraphs 1-127 as if fully stated herein.

129.    Defendants Seeman, Holtz, Seeman Holtz, PL Holdings, and PL Entities (collectively, the "RICO Defendants"), were associated in an enterprise and conspired, aided and abetted and agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of Fla. Stat. §§ 772.103(1), (3)-(4), 772.104(1), 777.011, and 777.03(1)(a).

130.    The RICO Defendants engaged in a pattern of racketeering activity and engaged in more than two incidents of racketeering or racketeering conduct that has the same or similar intents, results, accomplices, victims, or methods of commission, and that are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

**The Enterprise**

131.    The PL Entities constituted an illegal scheme (the "Enterprise") that was

organized for the purpose of inducing investors to invest monies in the PL Entities by means of untrue statements of material fact and the omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including the following:

    a.   Representing that there was collateral to secure repayment of the Notes, when there was no secured interest in collateral;

    b.   Representing that the Notes were safe investments that were consistent with an investment objective of safety of principal, when they were highly risky; and

    c.   Failing to disclose that the PL Entities would pay commissions to Seeman Holtz for selling the Notes to investors.

132.    Each of the RICO Defendants was employed by or associated with the Enterprise.

    a.   Seeman was the Chief Executive Officer and an agent of each of the PL Entities and personally participated or aided in making each of the sales of the Notes based on the above-described misrepresentations and/or material omissions of facts to investors.  In addition, Seeman was personally involved in structuring, approving and facilitating the byzantine manner in which the compensation was paid to Seeman Holtz in connection with the sales of the PL Entities' Notes

    b.   Holtz was the Executive Vice President and Secretary and an agent of each of the PL Entities and personally participated or aided in making each of the sales of the Notes as evidence by, among other things, the fact that he was personally involved in structuring, approving and facilitating the byzantine manner in which the compensation was paid to Seeman Holtz in connection with the sales of the Notes.

    c.   Seeman Holtz, PL Holdings, and the PL Entities effectuated the financial structure for the Enterprise. These Defendants created the illicit financial structure that would best serve the RICO Defendants in accomplishing the Enterprise's purpose. They also implemented and managed the illicit financial structure in which the compensation was paid to Seeman Holtz in connection with the sales of the Notes, the proceeds from the sale of the Notes of the various PL Entities were commingled and failed to properly secure the collateral for the Notes as was represented to investors.

133.    Each of the RICO Defendants conducted or participated, directly or indirectly, in

the Enterprise through a pattern of criminal activity, consisting of numerous and repeated uses of the interstate mails and wire communications, and acts of money laundering, all with the purpose of executing a scheme to defraud.

134.    Each of the PL Entities is controlled (directly or indirectly) by Defendants Seeman and Holtz.

135.    The members of the Enterprise had a common purpose: to deceive investors in the Notes into believing that (1) there was collateral to secure repayment of the Notes, when there was no secured interest in collateral; (2)  the Notes were safe investments that were consistent with an investment objective of safety of principal, when they were highly risky; and (3) maximizing concealed commissions paid to Seeman Holtz for selling the Notes.

136.    The RICO Defendants agreed to engage in a pattern of racketeering activity using, among other things, the Seeman Holtz offices located in South Florida, to further the objectives of the Enterprise.

137.    The Enterprise functioned over a period of years and had a continuing, on-going structure, functioning as a continuous unit that maintained an ascertainable structure with established duties separate, distinct, and apart from the pattern of criminal activity described herein.

138.    The RICO Defendants conducted and participated, directly and indirectly, in the Enterprise through a pattern of criminal activity within the  meaning  of  Florida  Statute §772.103(3), including violation of federal mail and wire fraud statutes, in violation of 18 U.S.C. §§ 1341 and 1343; and violation of the Florida Communications Fraud Act, Fla. Stat. § 817.034(4)(a). Acts of mail and wire fraud are subject to  indictment  or  information  as a criminal offense  pursuant  to  18 U.S.C. § 1961(1)(B), and are accordingly specifically delineated as

"criminal activity" pursuant to Florida Statute § 772.102(1)(b). Violation of the Florida Communications Fraud Act is specifically delineated as "criminal activity" pursuant to Florida Statute § 772.102(1)(a)(22).

139.    These incidents of criminal activity had the same or similar intents, results, accomplices, participants, victims, or methods of commission, or otherwise were interrelated by distinguishing characteristics and were not isolated incidents.

140.    The RICO Defendants each directed, controlled, operated, and managed the Enterprise's affairs including, among other things, by agreeing to perform the following services, among others, which facilitated the activities of the Enterprise and its members:

    a.   The RICO Defendants devised the above-described scheme to defraud investors and divert their invested funds using the PL Entities for the personal gain of the RICO Defendants;

    b.   The RICO Defendants knowingly created, implemented, and managed the illicit financial structure in which undisclosed and concealed compensation was paid to Seeman Holtz from the sale of the Notes, the proceeds from the sale of the Notes of the various PL Entities was improperly commingled, and the collateral for the Notes was never secured – contrary to their representations to investors.

    c.   The RICO Defendants facilitated an intricate web of transfers among the various PL Entities to disguise defaults of certain of the Notes and the fact that the collateral that was to secure those defaulted Notes was unsecured;

    d.   Seeman and Holtz reviewed the contents of the Notes and Notes Purchase Agreements, were familiar with them, and understood they, their agents, and the PL Entities they controlled had to abide by them.  However, they knowingly caused the PL Entities not to perform the obligations owed to Noteholders.

141.    The success of the Enterprise would not have been achieved but for the active, willing participation of Seeman Holtz and its office located in South Florida. The acts of Seeman Holtz in Florida provided the Enterprise with a platform through which the Enterprise could

manipulate the funds it solicited from Plaintiff and the Class through withdrawal or transfer for the purposes of converting the funds for the unlawful uses of the Enterprise.

142.    Plaintiff has demonstrated the continuity of the Defendants' conduct over a fixed period of time spanning years.  Furthermore, the RICO Defendants continue to engage in these predicate acts and harm Class members on a daily basis, which establishes a threat of long-term racketeering activity and evidences the continuity of the RICO Defendants' open-ended pattern of racketeering activity.

143.    The success of the Enterprise's fraudulent investment scheme made it possible for the RICO Defendants to enjoy substantial illegal financial benefits, through illicit payments and transaction fees.

144.    The RICO Defendants used and invested the income they received through their pattern of racketeering activity to operate their business which caused Plaintiff and the Class members to suffer direct damages.  The investment of the illicit proceeds obtained by the RICO Defendants through their fraudulent and illegal conduct enabled them to perpetuate the operation of the enterprise and to continue to defraud Plaintiff and the Class members.

**Defendants' Pattern of Racketeering Activity through the Enterprise**

145.    To effectuate the illegal objectives of the Enterprise and in furtherance of the scheme to defraud, the RICO Defendants committed numerous overt acts affecting hundreds of investors in violation of the federal mail and wire fraud statutes, as well as the Florida Communications Fraud Act.

146.    These predicate acts constitute a pattern of criminal racketeering activity because (1) at least two of the acts had the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated

incidents; (2) as described throughout this Complaint, this series of related acts extended over a substantial period of time; and (3) the last of such related acts occurred within 5 years after a prior incident of criminal activity.

147.   The RICO Defendants conducted the affairs of the Enterprise or participated in the affairs of the Enterprise, directly or indirectly, though a pattern of racketeering activity (wire fraud and mail fraud) in violation of

148.   At all relevant times, the RICO Defendants devised and carried out a scheme to conduct the affairs of the Enterprise to intentionally defraud investors in Florida and throughout the United States, including the Plaintiff and the Class, to enter into the Notes for which Seeman Holtz received undisclosed commissions and fees, and then entrusted the remaining funds (*i.e.*, Plaintiff's and the Classes' principal investments) to the PL Entities, which commingled those funds and failed to secure with collateral, contrary to what was represented to the investors

149.   The RICO Defendants promoted the sale of the Notes through radio and newspaper advertising paid for with proceeds of the scheme, which directed potential investors to contact Seeman Holtz using a toll-free telephone number, as well as communications through the internet, email, U.S. mail and other interstate delivery services, and wire transfers, and interstate emails, telephone calls, and wire transfers were used in furtherance of the scheme.

150.   Specifically, the RICO Defendants directed, approved or ratified the use of radio and newspaper advertising, the internet, interstate email, telephone calls, and other communications to intentionally defraud investors in Florida and other states, including Plaintiff and the Class, to invest in the Notes that were extraordinarily risky, were unregistered, and were not secured by collateral as represented in the RICO Defendants' advertising and other communications.

151.    As part of this scheme, by the use of radio, newspapers, interstate emails, internet, and telephone calls, the Enterprise targeted and solicited unsophisticated individual investors to invest in the Notes. The RICO Defendants' use of radio commercials, newspapers, internet, interstate emails, and telephone calls intentionally created the false impression that the Notes were safe, low-risk investments by representing there was collateral to secure repayment of the Notes, when there was no secured interest in collateral, and therefore the investors' principal was not safely secured.  Furthermore, the RICO Defendants' use of radio commercials, newspapers, internet, interstate emails, and telephone calls intentionally omitted that the PL Entities would pay substantial commissions to Seeman Holtz for selling the Notes to investors.

152.    Upon the sale of a Note to an investor, the Enterprise furthered the scheme by using interstate wires to pay the undisclosed commissions to Seeman Holtz and make purported interest distributions to investors, via wires and electronic bank withdrawals.

153.    The RICO Defendants continued to make false and misleading statements and material omissions concerning the Notes via interstate mail and electronic mail communications to conceal from investors, including Plaintiff, that the Notes were not properly secured by collateral and/or in default.

154.    The RICO Defendants' conduct constitutes "fraud by wire" within the meaning of 18 U.S.C. § 1343 and "fraud by mail" and "investment fraud," which are "racketeering activit[ies]" as defined by 18 U.S.C. 1961(1). Its repeated and continuous use of such conduct to participate in the affairs of the Enterprise constitutions a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

### Violations of the Florida RICO Statute

155.    The RICO Defendants willfully and knowingly conducted or participated, directly

or indirectly, in the Enterprise through a pattern of criminal activity within the meaning of Florida Statute § 772.103(3).

156.    For the purpose of executing the scheme to defraud, the RICO Defendants conducted and participated in the Enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications, in violation of the Florida Communications Fraud Act, Fla. Stat. § 817.034(4)(a).

157.    Because the scheme was not disclosed, and as a result of the RICO Defendants' conduct and participation in the racketeering activity in violation of section 772.103 as alleged herein, Plaintiff and the Class could take no action to avoid the misuse and embezzlement of their funds.

158.    The RICO Defendants' scheme to defraud, misuse, and embezzle funds caused Plaintiff and the Class to suffer damages in the form of the loss of their investments, which were transferred to Defendants or the entities they controlled as a direct and proximate result of the criminal activity described herein.

159.    The RICO Defendants are jointly and severally liable for their own acts and those of the other participants of the Enterprise as well as the entities controlled by members of the Enterprise. As a result of the RICO Defendants' acts, Plaintiff and the Class invested over $5 million in the Enterprise's scheme.

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demands judgment against the RICO Defendants together with prejudgment interest, attorneys' fees, costs, post-judgment interest, and any and all further relief deemed just, equitable, and proper.

**Count VII**
***Conspiracy to Violate***
***Florida's Civil Racketeer Influenced and Corrupt Organizations Act***
**(against Defendants Seeman, Holtz, Seeman Holtz, PL Holdings, and PL Entities)**

160.    Plaintiff incorporates paragraphs 1-159 above as if fully set forth herein.

161.    At all relevant times, each of the RICO Defendants was a principal, agent, alter ego, joint venturer, partner, or affiliate of the other Defendant, and in doing the acts alleged herein, was acting within the course and scope of that principal, agent, alter ego, joint venture, partnership, or affiliate relationship. Each RICO Defendant had actual or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced, or authorized the wrongful acts of the co-Defendant, and/or retained the benefits of said wrongful acts.

162.    The RICO Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants, and others, in perpetrating their unlawful, unfair or fraudulent scheme on Plaintiff and the Class. In taking action, as alleged herein, to aid, abet, encourage, and substantially assist the commissions of the wrongful acts and other wrongdoings complained of, each of the RICO Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing herein alleged.

163.    The RICO Defendants agreed with each other, beginning no later than September 2015, to violate Florida Civil RICO as alleged herein by accomplishing a common and unlawful plan, namely to engage in a pattern of racketeering activity.

164.    The objects of the conspiracy included, without limitation, the misappropriation of funds from Plaintiff and the Class by means of a scheme to defraud. By these misappropriations, the RICO Defendants gained personal benefits, obtained funds directly from the conversion of

36

Plaintiff and the Class's funds for their own use, and fraudulently profited through their fraudulent scheme.

165.    Each of the RICO Defendants knowingly and willfully joined in and became a member of such conspiracy.

166.    At the time each of the RICO Defendants joined such conspiracy, they did so with the specific intent either to personally engage in at least two incidents of racketeering conduct, or they specifically intended to otherwise participate in the affairs of the Enterprise with the knowledge and intent that other members of the conspiracy would engage in at least two incidents of racketeering conduct, as part of a "pattern of racketeering conduct."

167.    The RICO Defendants' agreement to join a conspiracy to engage in a pattern of racketeering activity can be reasonably inferred from their close professional relationship, their mutual financial gain resulting from their pattern of racketeering activity, their use of bank accounts and property, their use of the Seeman Holtz offices in Florida, and the dependency of the fraudulent acts of each on the fraudulent acts of the others. The RICO Defendants' agreement was manifested by the number and similarity of the racketeering offenses committed by them as discussed herein.

168.    By reason of the RICO Defendants' conspiracy to violate Florida Civil RICO in violation of Fla. Stat. § 772.103, Plaintiff and the Class suffered injury in that they invested in the Notes, investments which they would not have made but for the RICO Defendants' scheme to defraud. Specifically, Plaintiff and the Class invested over $5 million in the Notes. The RICO Defendants' misuse and embezzlement of funds caused Plaintiff and the Class to suffer damages in the form of the loss of their investments as a direct and proximate result of the RICO Defendants' commission of the foregoing predicate acts.

169.     The RICO Defendants' RICO violations were the actual cause of Plaintiff and the Class's damages, which would not have occurred without the RICO Defendants' conduct. In addition, Defendants' acts and violations were the direct, natural, and proximate cause of damage to Plaintiff and the Class, including but not limited to, the loss of Plaintiff and the Class's funds.

170.     The RICO Defendants are jointly and severally liable for the acts of one another and for the acts of the members of the Enterprise, as their acts were pursuant to a single conspiracy.

171.     WHEREFORE, Plaintiff, on behalf of herself and all similarly situated individuals and entities, demand judgment against the RICO Defendants together with prejudgment interest, attorneys' fees, costs, post-judgment interest, and any and all further relief deemed just, equitable, and proper.

## Jury Trial Demanded

Plaintiff hereby demands trial by jury for all issues so triable.

Respectfully submitted,

Dated: June 7, 2021

SALLAH ASTARITA & COX, LLC
*Co-Counsel for Plaintiff*
One Boca Place
2255 Glades Rd., Ste. 300E
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Joshua A. Katz, Esq.
**James D. Sallah, Esq.**
Fla. Bar No. 0092584
Email: jds@sallahlaw.com
**Joshua A Katz, Esq.**
Fla. Bar No. 0848301
Email: jak@sallahlaw.com

SILVER LAW GROUP
*Co-Counsel for Plaintiff*
11780 W. Sample Road
Coral Springs, FL 33065
Tel.: (954) 755-4799
Fax: (954) 755-4684

**Scott L. Silver, Esq.**
Fla. bar No. 095631
Email: ssilver@silverlaw.com
**Ryan A. Schwamm, Esq.**
Fla. Bar No. 1019116
Email: rschwamm@silverlaw.com
**Peter M. Spett, Esq., Of Counsel**
Fla. Bar No. 0088840
Email: pspett@silverlaw.com

MENZER & HILL, P.A.
*Co-Counsel for Plaintiff*
7280 W. Palmetto Park Rd., Ste. 103
Boca Raton, FL 33433
Tel.: 888-923-9223
Fax: 561-880-8449

**Gary S. Menzer, Esq.**
Fla. Bar No. 60386
Email: gmenzer@menzerhill.com
**Michael S. Hill, Esq.**
Fla. Bar No. 37068
Email: mhill@menzerhill.com

BUCKNER + MILES
*Co-Counsel for Plaintiff*
2020 Salzedo Street, Ste. 302
Coral Gables, Florida 33134
Tel.: (305) 964-8003
Fax: (786) 523-0585

**David M. Buckner, Esq.**
Fla. Bar No. 60550
Email: david@bucknermiles.com
**Brett E. von Borke, Esq.**
Fla. Bar No. 0044802
Email: vonborke@bucknermiles.com