## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-61179-RAR

**FANNY B. MILLSTEIN**,

     Plaintiff,

v.

**ERIC HOLTZ**, *et al.*,

     Defendants.

_____/

### ORDER DENYING DEFENDANT MARSHALL SEEMAN'S MOTION
### TO DISMISS OR FOR A MORE DEFINITE STATEMENT

**THIS CAUSE** comes before the Court upon Defendant Marshall Seeman's Motion to Dismiss Plaintiff's Amended Complaint or For a More Definite Statement of the Claim [ECF No. 75] ("Motion").  Seeman classifies the statements made in Plaintiff's Amended Complaint as untrue and "hyperbolic . . . attempts to smear the names of two men, besmirch their business, and launch vile accusations[,]" Mot. at 3-4, while Plaintiff claims she has properly alleged "complete participation in and orchestration of a $300 million fraudulent investment scheme through which [Seeman] and his cohorts victimized and profited at the expense of Plaintiff and the Investor Class."  Plaintiff's Response in Opposition at 1, [ECF No. 81] ("Response").

Seeman's Motion is predominantly based on his position that the allegations in the Amended Complaint are untrue.  However, a motion to dismiss is not the proper vehicle for disputing the truthfulness of a plaintiff's claims and here, Plaintiff has levied sufficient allegations, taken as true, for the Court to find that the Amended Complaint is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Thus, having reviewed the Motion, the Response, the record, and being otherwise fully advised, it is **ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED**.

## BACKGROUND

### I.  Factual Allegations in the Amended Complaint

Plaintiff alleges that she and the Investor Class were victims of a "Ponzi-like" scheme conducted through an enterprise controlled by Seeman and his associates. Am. Compl. ¶¶ 1, 90-101.  The Amended Complaint avers both tortious misconduct and statutory violations of law arising out of the sale of unregistered non-exempt securities promoted, marketed, and recommended by a network of unregistered agents who acted as "financial advisors," as described by Seeman's company, Defendant Seeman Holtz.  *Id.* ¶¶ 3, 6, 9-14. This purported promotion and sale of unregistered non-exempt securities to investors—primarily senior citizens—was allegedly orchestrated by Seeman, his former partner Eric Holtz ("Holtz"), and Defendant Brian J. Schwartz ("Schwartz").  *Id.* ¶¶ 1, 3, 9-14, 99.  Tragically, after the filing of the initial Complaint, Holtz purportedly took his own life.  Resp. at 2.

In addition to the sale of promissory notes ("Notes") that were not properly registered as securities nor qualified for exemption from registration under applicable state securities statutes, Am. Compl. ¶¶ 3, 10, 117, Plaintiff alleges that Seeman, Holtz, Schwartz, and their agents were not properly licensed as financial advisors or properly registered to sell securities like the Notes. *Id.* ¶¶ 3, 9-14.  Plaintiff alleges that the outstanding Notes are in default for failure to repay Plaintiff, and other similarly situated investors ("Investor Class"), the principal and/or outstanding interest due to them.  *Id.* ¶¶ 15- 16, 83, 85.  Plaintiff further alleges that based on the terms and guarantees of the Notes, the Notes were advertised as being collateralized by life insurance policies issued to third parties. *Id.* ¶¶ 3, 5, 10, 12-13, 70-78.  However, the collateral agent did not protect investors as promised and allowed Seeman, Holtz, Schwartz and their agents to commingle the

collateral in the name of, and for the benefit of, entities controlled by themselves or other defendants. *Id.* ¶¶ 3, 5, 12, 13, 70-78, 97-98.

In addition to the lack of collateral, Plaintiff alleges numerous additional misrepresentations associated with the Notes, including: (1) inability to pay interest or repay debts; (2) hidden compensation paid to Seeman Holtz; and (3) failure to use proceeds from the sale of the Notes for the stated purpose. *Id.* ¶¶ 8, 15-16, 60-61, 68-89.

### II.  Plaintiff's Counts

Based on the above allegations, Plaintiff alleges nine counts on behalf of herself and the Investor Class: I. Violation of Fla. Stat. § 517.07(1); II. Violation of Fla. Stat. § 517.12(1); III. Violation of Fla. Stat. § 517.301; IV. Breach of Fiduciary Duty; V. Negligence; VI. Violation of Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.103(1), (3)-(4), 772.104(1), 777.011, and 777.03(1)(a) ("Florida RICO"); Count VII. Conspiracy to Violate Florida RICO; Count VIII. Violation of 18 U.S.C. § 1962(a), (c)-(d) ("federal RICO"); and Count IX. Equitable Action for Appointment of Receiver, for Accounting and for Disgorgement of Ill-Gotten Gains, Unjust Enrichment, and Constructive Trust.

### <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Iqbal*, 556 U.S. at 678.  A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and

attached exhibits but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

Federal Rule of Civil Procedure 12(e) provides that a party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." *Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs*., 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012) (citations omitted). Such a motion "is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." *Id*.

## <u>ANALYSIS</u>

Seeman provides nine arguments for why the Amended Complaint should be dismissed, or a more definite statement be required. He claims: (1) the Amended Complaint is an impermissible shotgun pleading; (2) Plaintiff has failed to allege facts that would allow Seeman to be held personally liable; (3) Plaintiff has failed to include copies of promissory notes, private placement memoranda, and "all sort of other documents" and the Court should require her to do so; (4) Plaintiff does not have standing to bring the claims; (5) Plaintiff has not pled fraud with particularity; (6) there is no plausible claim of a breach of fiduciary duty; (7) Defendant had no duty to Plaintiff and thus Plaintiff's negligence claim must be dismissed; (8) Plaintiff has failed to properly plead the required elements of their Florida and federal RICO claims; and (9) Plaintiff

has failed to file a RICO case statement.  However, as explained below, Plaintiff's Amended Complaint overcomes these arguments.

Rather than address each of Seeman's arguments individually, and due to substantial factual overlap, the Court will address his points as follows:  I. Standing; II. Adequacy of the Amended Complaint; III. Fraud; IV. Fiduciary Duty & Negligence; and V. RICO Claims.

## I.  Standing

The Court begins, as it must, with standing.  *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (a Court "must begin with the question of standing . . . [i]f there is no standing, [it] must end there, too.").  To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  These three elements must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Wilding v. DNC Servs. Corp.,* 941 F.3d 1116, 1124 (11th Cir. 2019) (citing *Lujan,* 504 U.S. at 561); *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) ("How much evidence is necessary to satisfy [the standing requirement] depends on the stage of litigation at which the standing challenge is made.").

Plaintiff's standing argument, while confusingly asserted, appears to focus on the securities fraud claims under Florida law.  Seeman argues that "[n]owhere is there a statement that Plaintiff was a holder of any Note at the time the amended complaint was filed." Mot. at 12.  According to Seeman, this renders Plaintiff's Florida security fraud counts defective because a person "establishes standing to foreclose on a note by showing that [the person] is the holder of the note or a nonholder in possession . . . ." *Id*.  Seeman is correct that this detail is not included in the Amended Complaint—but Seeman's argument fundamentally misunderstands the nature

Plaintiff's claim.  Plaintiff has *not* sued to foreclose on her Notes.  Plaintiff has alleged she was defrauded when she purchased the Notes from the SH Enterprise.  This is sufficient to establish standing as sections 517.211(1) and (3) of the Florida Statutes include remedies "for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security."  *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296 (11th Cir. 2019) (holding that economic harm resulting from a statutory violation is a "'well-established injur[y]-in-fact under federal standing jurisprudence.'") (quoting *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014)).  Thus, the Amended Complaint properly alleges standing on the counts relating to the violation of Florida securities law.

## II.  The Adequacy of the Amended Complaint

### a.  *Shotgun Pleading*

Seeman argues that the Amended Complaint "asserts the vast majority of claims generally against all Defendants[,]" Mot. at 7, and that "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."  *Id*. (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).  Further, Seeman claims that the Amended Complaint is a shotgun pleading because "every count in the amended complaint incorporates by reference factual allegations in paragraphs 1-112 . . . ."  *Id*.  The former argument is easily disposed of, while the latter constitutes a misunderstanding of Eleventh Circuit caselaw regarding shotgun pleadings.

"The essence of a shotgun pleading is 'that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'"  *Vujin v. Galbut*, 836 F. App'x 809, 814 (11th Cir. 2020) (quoting *Anderson v. District Bd of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364,366 (11th Cir. 1996)).  The Eleventh Circuit has identified four types of pleadings that produce this problem: (1) "complaints that contain multiple counts where each count

adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "complaints that are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) "complaints that do not separate each cause of action or claim for relief into separate counts"; and (4) "complaints that assert claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 815 (quoting *Weiland v. Palm Beach Cty. Sherriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)) (internal quotations omitted).

Based on the aforementioned criteria, Plaintiff's Amended Complaint does not qualify as a shotgun pleading. Although many of Plaintiff's claims are asserted against all Defendants, Plaintiff has alleged the factual basis for Seeman's liability under each cause of action. Am. Compl. ¶¶ 1, 9-13, 60-89. For example, Plaintiff alleges that "Mr. Seeman acted as the chief executive officer" of the insurance agency Seeman Holtz and was one of three principal architects of the racketeering scheme and fraud. *Id.* ¶ 1. Plaintiff goes on to allege that Seeman "operated and controlled every aspect of the creation, sale and management of the Notes[,]" and "managed and controlled (a) the selling dealer, Seeman Holtz; (b) the network of unregistered agents who acted as 'financial advisors,' as described by Seeman Holtz; and (c) the investments through their management and control of the Notes." *Id.* ¶¶ 9, 11. While Seeman claims that "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of[,]" he does not explain why or how geographical or temporal factors preclude his involvement in the alleged conduct. Mot. at 7. Simply put, the Amended Complaint adequately details each Defendant's participation in the alleged scheme.

Seeman also claims the Amended Complaint is a shotgun pleading because "every count in the amended complaint incorporates by reference factual allegations in paragraphs 1-112 . . . ."

Mot. at 7. However, the Eleventh Circuit prohibits pleadings where "each *count* adopts the allegations of all preceding *counts*, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Vujin*, 836 F. App'x at 815 (emphasis added); *see also S.E.C. v. City of Miami*, 988 F. Supp. 2d 1343, 1354 (S.D. Fla. 2013) (denying motion to dismiss complaint that incorporated the factual allegations in paragraphs 1-115 into each count). Thus, Seeman's allegation that "every count in the amended complaint incorporates by reference factual allegations in paragraphs 1-112[,]" in no way transforms the Amended Complaint into a shotgun pleading. Rather, it is clear Plaintiff's counsel merely chose to incorporate factual allegations into various counts—a common and permissible method of drafting complaints.

### b. *Personal Liability*

In addition to claiming the Amended Complaint is a shotgun pleading, Seeman posits the Amended Complaint improperly attempts to "impose liability" on him as "an LLC member simply because he is a member" in contravention of Florida law. Mot. at 8 (citing Fla. Stat. § 608.4227(1)). This is factually incorrect. The Amended Complaint is replete with examples detailing Seeman's *personal* involvement in the alleged scheme. Most notably, the Amended Complaint alleges that "Seeman personally participated or aided in the offering and sale of the unregistered Notes, including the Notes sold to Plaintiff and the Investor Class, in violation of Fla. Stat. § 517.12(1)." Resp. at 9 (citing Am. Compl. ¶¶ 120, 136). Taking these allegations as true, which the Court must at this stage of the proceedings, Seeman's personal involvement has undoubtedly been alleged in the Amended Complaint.

More importantly, this treatment of LLC member liability is consistent with the holdings of multiple courts in this district—"if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether

liability attaches to the corporation for the tort." *Special Purposes Accts. Receivable Coop. Corp. v. Prime One Cap. Co*., 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000); *see also Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc*., 657 F. Supp. 2d 1279, 1287-88 (M.D. Fla. 2009) ("[i]t is not necessary to pierce the corporate veil . . . if an individual is a direct participant in the alleged improper conduct.").  Further, it is well settled that Seeman's status as an officer or member of the LLCs used in furtherance of the alleged misconduct does not shield him from individual liability with respect to section 608.4227(1) of the Florida Statutes.  *See TEC Serv., LLC v. Crabb*, No. 11-62040, 2013 WL 11326552, at *2 (S.D. Fla. Jan. 23, 2013) (holding that Fla. Stat. § 608.4227(1) only prohibits imputing liability for debts, obligations, and liabilities of the LLC; it does not speak to individual liability).  Thus, Plaintiff has sufficiently alleged Seeman's personal liability.

### c. *Extrinsic Documents*

Defendant's entire basis for a more definite statement hinges on Plaintiff's failure to include copies of promissory notes, private placement memoranda, and "all sort of other documents" in her Amended Complaint. Mot. at 10.  But the Federal Rules of Civil Procedure do "not require the plaintiff to attach a written instrument to the complaint." *Williams v. Scottsdale Ins. Co*., No. 19-60736, 2019 WL 7708504, at *2 (S.D. Fla. June 19, 2019).  Indeed, it is well settled that "a document need not be physically attached to a pleading to be incorporated by reference into it." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  Plaintiff has specifically identified the Notes that she purchased, their maturities, and those portions of the private placement memoranda that contained material misrepresentations. Am. Compl. ¶¶ 8, 15-16, 60-61, 68-89.  These misrepresentations allegedly included that: (1) the collateral agent did not protect investors; (2) the collateral did not exist; (3) SH Enterprise failed to pay interest or repay debts; (4) hidden compensation was paid to Seeman Holtz; and (5) Defendants failed to use proceeds

from the sale of the notes for their stated purpose.  *Id*.  Thus, the allegations are more than sufficient to place Seeman on notice of the claims against him and a more definite statement is not required.

### III.  Fraud

In addition to general pleading deficiencies, Seeman claims that the Amended Complaint must be dismissed because Plaintiff has not pled Counts I-III, or their RICO claims, with particularity.  However, it is clear from an examination of Plaintiff's Amended Complaint that her allegations of fraud meet the standard set out by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  While circumstances constituting fraud or mistake must be pled with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

In Counts I-III, Plaintiff alleges violations of Florida securities law, which prohibits employing any scheme or artifice to defraud.  *See generally* Fla. Stat. § 517.07.  Further, Plaintiff's racketeering claims are predicated on mail and wire fraud.  Am. Compl. ¶ 165.  Thus, based on Eleventh Circuit precedent, the Amended Complaint must lay out "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent."  *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008).  In *FindWhat Inc. Grp. v. FindWhat.com*, the Eleventh Circuit provided further guidance on these pleading requirements, stating:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

658 F.3d 1282, 1296 (11th Cir. 2011).  Here, the Amended Complaint is clear as to the source of the alleged misrepresentations and omissions; when such misrepresentations and/or omissions were made; their content and the way they misled Plaintiff; and what Seeman obtained as a consequence of the fraud.

The Amended Complaint also clearly states that the omissions were made in the offering materials for various investments.  Plaintiff goes on to allege these investments were unregistered and sold by unregistered agents; there was insufficient collateral to secure repayment on the investments; Seeman created a complex corporate structure designed to conceal improper compensation to unregistered sales agents; and the risk level of these investments was omitted. Am. Compl. ¶¶ 1-14, 60-89.  The Amended Complaint alleges the companies that issued the Notes were at all times controlled by Seeman, among others, and that Seeman "owned, operated and controlled every aspect of the creation, sale and management of the Notes." *Id.* ¶ 9; *see also id.* ¶¶ 65-66.  Further, the Amended Complaint states that these omissions were made to Plaintiff and the Investor Class during a specific time period, as the Defendants allegedly "raised more than $400 million in capital since 2011 through the sale of the Notes." *Id.* ¶ 17.  Thus, the who, what, when, where, and how of the fraud have been adequately alleged as required by Rule 9(b) and Seeman's argument regarding particularity fails.

### IV.  Fiduciary Duty and Negligence Claims

While breach of fiduciary duty and negligence are two distinct torts, Seeman's argument with respect to both Counts maintains that "the Amended Complaint contains absolutely no basis for the finding of any duty to Mrs. Millstein on the part of any of the Defendants."  Mot. at 16. The Court will analyze Plaintiff's tortious misconduct claims in turn.

### a. *Fiduciary Duty*

"The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor." *Gochnauer v. A.G. Edwards & Sons, Inc*., 810 F.2d 1042, 1049 (11th Cir. 1987); *Abramowitz v. Westport Nat'l Bank*, No. 9-60510, 2009 WL 10667468, at *8 (S.D. Fla. Nov. 5, 2009) (finding plaintiffs stated breach of fiduciary duty claims under Florida law against investment advisors who managed money that was invested in Ponzi scheme). This principle also applies where a plaintiff pleads that a defendant was not a registered broker. *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1337-38 (S.D. Fla. 2018) (the fact that defendants were not registered brokers did not "preclude Defendants from being charged with the same fiduciary duties that apply to all individuals who sell securities.").

Under Florida law, "[a] fiduciary relationship may be either express or implied." *Hogan v. Provident Life and Accident Ins. Co.,* 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (citing *Maxwell v. First United Bank,* 782 So. 2d 931, 933 (Fla. 4th DCA 2001)). When a fiduciary duty is implied, it is "'premised upon the specific factual situation surrounding the transaction and the relationship of the parties' and exist[s] where 'confidence is reposed by one party and a trust accepted by the other.'" *Id*. (internal citations omitted); *see also Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F. Supp. 2d 1064, 1071 (S.D. Fla. 2003). "In order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp*., 764 F. Supp. 176, 179 (S.D. Fla. 1991) (citing *Cripe v. Atlantic First Nat. Bank*, 422 So. 2d 820 (Fla. 1982)).

Seeman claims he had no fiduciary duty to Plaintiff because "[t]he Amended Complaint does not describe any 'relationship' between Plaintiff and most of the Defendants, particularly Mr. Seeman." Mot. at 16. However, the Amended Complaint clearly details how Seeman individually

participated in the SH Enterprise that allegedly promoted, recommended, and sold unregistered Notes to Plaintiff under the guise of providing her with sound investment advice. Am. Compl. ¶¶ 1-14, 68-89. Specifically, Plaintiff alleges that: (1) Seeman, in his individual capacity and through his agents and partners, thereby owed Plaintiff and the Investor Class a fiduciary duty; (2) Plaintiff and the Investor Class reposed their trust and confidence in Seeman and his cohorts; (3) Seeman, himself and through his agents, undertook such trust and assumed a duty to advise, counsel, and protect Plaintiff and the Investor Class; (4) in so doing, Seeman, individually and through his agents, breached fiduciary duties to Plaintiff and the Investor Class; and (5) this alleged misconduct caused Plaintiff and the Investor Class to incur damages. Am. Compl. ¶¶ 146-150.

To hold that an investment advisor who promoted, recommended, and sold unregistered Notes through unregistered agents did not owe a fiduciary duty to the buyers of the Notes would completely abrogate the laws of the state of Florida, which establish a fiduciary duty between brokers and their clients. While it may be ultimately true that no fiduciary relationship existed between Seeman and Plaintiff, or other members of the Investor Class, there is no doubt such a relationship has been adequately pled in the Amended Complaint.

### b.  *Negligence*

Once again, Seeman asserts he had no duty to Plaintiff and thus cannot be held liable for negligence. To state a claim for negligence, a plaintiff must allege that (1) defendant owed a duty of reasonable care to plaintiff; (2) defendant breached that duty; (3) the breach was the proximate cause of the injury to plaintiff; and (4) plaintiff suffered damages. *John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1350 (S.D. Fla. 2008). Plaintiff has alleged that Seeman's direct and personal participation in, and orchestration of, the SH Enterprise gave rise to the duties he owed Plaintiff and the Investor Class to recommend suitable investments and to deal with Plaintiff and members of the Investor Class in an honest and ethical manner. Am. Compl. ¶¶

1-14, 63-89, 152.   The Amended Complaint further specifies how Seeman's breaches of those

duties caused the damages incurred by Plaintiff and the Investor Class.  *Id.* ¶¶ 1-14, 63-89, 153.

Thus, the necessary elements of a negligence claim against Seeman have been properly pled.

### V.  State and Federal RICO Claims

Seeman claims that Plaintiff has failed to plead the elements of her claims under the Florida

and federal RICO Statutes.[1]   In doing so, Seeman merely alleges "that the corporate entities

described in the Amended Complaint include only NATIONAL SENIOR INSURANCE, INC.

d/b/a Seeman Holtz[,]" and "[b]ecause a RICO enterprise must be distinct from a defendant person,

the allegation is insufficient as a matter of law and the RICO counts should be dismissed."[2]   Mot.

at 18.   Seeman's position, as Plaintiff aptly puts it, "fundamentally misapprehends the nature of a

RICO association-in-fact enterprise, the type of enterprise alleged in the Amended Complaint."

Resp. at 16.

The Amended Complaint alleges that SH Enterprise "constituted a single association-in-

fact enterprise within the meaning of 18 U.S.C. § 1962(a), (c)-(d), as the term is defined in 18

U.S.C. § 1961(4)."  Am. Compl. ¶ 202.  Section 1961(4) provides that an enterprise includes "any

---

[1] At the pleading stage, the Court will analyze the Florida and federal RICO statutes in conjunction as Courts in Florida have routinely stated that courts interpreting the Florida RICO statute "may look to federal RICO decisions as persuasive authority."  *Palmas y Bambu, S.A. v. E.J. Dupont De Nemours & Co., Inc.*, 881 So. 2d 565, 583 (Fla. 3d DCA 2004) (citing *Lugo v. State*, 845 So. 2d 74, 96 n.39 (Fla. 2003)); *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000) ("[g]iven the similarity of the state and federal [RICO] statutes, Florida courts have looked to the federal courts for guidance in construing RICO provisions"); *O'Malley v. St. Thomas University, Inc.*, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992) ("Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act. Therefore, federal decisions should be accorded great weight.").  Further, neither party alleges a dispositive difference between the Florida and federal RICO statutes at this stage of the proceedings.

[2]  The Court notes that the latter portion of this quote appears to be taken from some authority, potentially an unpublished case.  Bizarrely, Seeman's Motion begins the quoted text in a separate paragraph, fails to close the quote, and provides no citation to authority.  Further, the Court is unable to discern the source of the quote, despite its best efforts, and will therefore treat this passage as an unsupported assertion.

union or group of individuals associated in fact although not a legal entity." An association-in-fact enterprise like the one alleged here is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Seeman seems to allege, without any reference to the concept by name, that the intra-corporate conspiracy doctrine precludes the existence of a conspiracy here. Mot. at 18. The intra-corporate conspiracy doctrine states that "[b]ecause a civil conspiracy requires an agreement between two or more parties, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017) (internal quotations and citations omitted). However, this is not a situation where the only "persons" constituting the alleged RICO enterprise are a corporation or its agents. Plaintiff has alleged multiple other actors were involved in the conspiracy, including the collateral agent Coral Gables Title and Escrow, Inc. and its principal, as well as a significant number of companies named in the Amended Complaint that issued the Notes and allegedly kicked money back to Seeman Holtz. Thus, Plaintiff's Amended Complaint does not run afoul of the intra-corporate conspiracy doctrine.

To the extent Seeman alleges additional pleading deficiencies regarding Plaintiff's RICO claims, that argument also fails. To succeed at the pleading stage, Plaintiff must plausibly allege "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). A Plaintiff may prove "continuity of racketeering activity, or its threat, *simpliciter* . . . in a variety of ways." *HJ Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989) (emphasis in the original); *see also Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017) ("Proving sufficient relationships for an associated-in-fact enterprise is not a particularly demanding task" and met where "the group . . . function[s] as a continuing unit.").

The Amended Complaint explicitly lays out the alleged racketeering activity. Plaintiff claims that Seeman, Holtz, and Schwartz "managed and controlled (a) the selling dealer, Seeman Holtz; (b) the network of unregistered agents who acted as 'financial advisors,' as described by Seeman Holtz; and (c) the investments through their management and control of the Notes." Am. Compl. ¶ 11. As part of its sale of the Notes, Seeman Holtz "provided Plaintiff and the members of the Class with copies of the Private Placement Memorandums ("PPMs") for each Note they purchased, as well as a Note Purchase Agreement for each Note they purchased." *Id.* ¶ 68. Seeman Holtz then collected the completed Note Purchase Agreements and transmitted them to the respective Note issuer. *Id.* ¶ 69. In turn, each of the Note-issuing Defendants kicked back to "Seeman Holtz a commission for selling the Notes, and similar notes to third parties, which it attempted to disguise as a 'service fee.'" *Id.* ¶ 14.

But the allegations of conspiracy don't end there. Plaintiff alleges that Defendants Seeman, Holtz, and Schwartz "formed Defendant Centurion . . . to facilitate the purchase, holding and servicing of the life settlement portfolio that was acquired with investor funds." Am. Compl. ¶ 90. Schwartz served as president and CEO of Centurion and "was the sole signatory on Centurion's bank accounts and . . . had signature authority on securities intermediary accounts holding life settlements." *Id.* Finally, Coral Gables Title and Escrow, Inc. purported to hold the collateral underlying each Note issuer. *Id.* ¶ 12. Thus, the multi-party conspiracy has been adequately alleged such that Plaintiff's Florida and federal RICO claims survive Defendant's Motion to Dismiss.

Lastly, Seeman claims that "both the Court and the defendants would be better informed if Plaintiff were required to put its theories and facts regarding the RICO violations in the form of a RICO case statement." Mot. at 20. However, as explained above, the Amended Complaint meticulously details its allegations pertaining to both the Florida and federal RICO counts.

Accordingly, the Court declines to order Plaintiff to file a RICO case statement. *Moskovits v. Aldridge Pite, LLP*, 677 F. App'x 510, 514 n.4 (11th Cir. 2017) (noting that "RICO case statements are no longer mandatory in the Southern District of Florida, but courts may still request them on a case-by-case basis.").

## <u>CONCLUSION</u>

For the aforementioned reasons, the allegations set forth in Plaintiff's Amended Complaint are sufficient to plausibly support all nine counts. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [ECF No. 75] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of August, 2022.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**