UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61179-RAR

**FANNY B. MILLSTEIN**,

    Plaintiff,

v.

**ERIC HOLTZ**, *et al.*,

    Defendants.

_____/

## ORDER DENYING DEFENDANT BRIAN SCHWARTZ'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant Brian Schwartz's Motion to Dismiss Amended Class Action Complaint [ECF No. 80] ("Motion"). In his Motion, Schwartz argues that there is no evidence that he participated in the allegedly fraudulent scheme because "Schwartz had a back-office role 'focused on financials and accounting' at certain entities where Plaintiff was not an investor, performing ministerial functions such as overseeing deposits and transfers[,]" Mot. at 2 (citations omitted), while Plaintiff claims she has properly alleged "Schwartz was an active, knowing, and central participant in a $300 million Ponzi-like fraudulent investment scheme . . . through which Schwartz and his cohorts victimized, and profited at the expense of, Plaintiff and the Investor Class." Plaintiff's Response at 1.

Essentially, Schwartz's Motion maintains that the allegations, as they relate to him personally, are untrue and he played a minor role, if any, in the fraudulent scheme. However, Plaintiff alleges Schwartz's role in the scheme was extensive and "a motion to dismiss is not the proper vehicle for disputing the truthfulness of a plaintiff's claims[.]" *Millstein v. Holtz*, No. 21-61179, 2022 WL 3594915, at *1 (S.D. Fla. Aug. 23, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, Plaintiff has levied sufficient allegations, taken as true, for the Court to find

that the Amended Complaint is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Having reviewed the Motion, Plaintiff's Response, Schwartz's Reply in Support [ECF No. 89], Plaintiff's Amended Complaint [ECF No. 55], the record, applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED** as set forth herein.

## BACKGROUND

### I. General Factual Allegations in the Complaint

Plaintiff alleges that she and fellow investors ("the Investor Class") were victims of a "Ponzi-like" scheme conducted through an enterprise controlled by Schwartz and his associates. Am. Compl. ¶¶ 1, 90-101.  The Amended Complaint avers both tortious misconduct and statutory violations of law arising out of the sale of unregistered non-exempt securities promoted, marketed, and recommended by a network of unregistered agents who acted as "financial advisors," as described by Defendant Seeman Holtz. *Id.* ¶¶ 3, 6, 9-14.  This purported promotion and sale of unregistered non-exempt securities to investors—primarily senior citizens—was allegedly orchestrated by Schwartz, along with the heads of Seeman Holtz, Defendants Eric Holtz, and Defendant Marshall Seeman. *Id.* ¶¶ 1, 3, 9-14, 99.

In addition to the sale of promissory notes ("Notes") that were not properly registered as securities nor qualified for exemption from registration under applicable state securities statutes, *id.* ¶¶ 3, 10, 117, Plaintiff alleges that Seeman, Holtz, Schwartz, and their agents were not properly licensed as financial advisors or properly registered to sell securities like the Notes. *Id.* ¶¶ 3, 9-14.  Plaintiff alleges that the outstanding Notes are in default for failure to repay Plaintiff, and the Investor Class, the principal or outstanding interest due to them. *Id.* ¶¶ 15- 16, 83, 85.  Plaintiff further alleges that based on the terms and guarantees of the Notes, the Notes were advertised as being collateralized by life insurance policies issued to third parties. *Id.* ¶¶ 3, 5, 10, 12-13, 70-78.

However, the collateral agent did not protect investors as promised and allowed Seeman, Holtz, Schwartz and their agents to commingle the collateral in the name of, and for the benefit of, entities controlled by themselves or other defendants. *Id.* ¶¶ 3, 5, 12, 13, 70-78, 97-98.

In addition to the lack of collateral, Plaintiff alleges numerous additional misrepresentations associated with the Notes, including: (1) inability to pay interest or repay debts; (2) hidden compensation paid to Seeman Holtz; and (3) failure to use proceeds from the sale of the Notes for the stated purpose. *Id.* ¶¶ 8, 15-16, 60-61, 68-89.

### II. Allegations Against Schwartz Specifically

The Amended Complaint alleges that Seeman and Holtz were materially assisted in the SH Enterprise by Schwartz, who primarily acted as the SH Enterprise's untitled chief financial officer, focusing on its financials and accounting. *Id.* ¶ 1. Schwartz helped form and managed Centurion Insurance Services Group, LLC, and subsequently Centurion's various affiliates (collectively, "Centurion"). *Id.* ¶ 90. Plaintiff alleges that Centurion was formed for use by the SH Enterprise to facilitate the purchase, holding, and servicing of a life settlement portfolio that was acquired using Plaintiff's and the Investor Class's monies, which were invested in unregistered Notes issued by certain limited liability companies that are now listed as defendants. *Id.* The note-issuing entities loaned funds directly to Centurion so Centurion could purchase, hold, and service the life settlement portfolio. *Id.* Schwartz served as president and CEO of Centurion. *Id.*

Plaintiff alleges that by 2013, funds raised primarily from Plaintiff and the Investor Class by the individual note-issuing entities were not being directly invested in life settlements by the respective entities. *Id.* ¶ 93. Instead, investors' funds were transferred to Centurion and characterized as term loans from the note-issuing entities to Centurion with interest payments to be made annually, unless extended by the entity, which subsequently grew commonplace. *Id.* In certain loan records documenting these transactions, the face amount of the interest rate the note-

issuing entities charged to loan funds to Centurion was lower than the interest rate promised by the entities to individual note investors, who essentially and unknowingly were funding these loans. *Id*.

Plaintiff alleges that while Schwartz was president and CEO of Centurion, Schwartz's salary was at times paid by Seeman Holtz, and Schwartz had several roles in the SH Enterprise including, but not limited to: (1) operating Centurion without disclosing Seeman's and Holtz's roles to the public; (2) overseeing the deposit of incoming investor funds into the note-issuing entity accounts via wire transfers; (3) overseeing the rapid disbursement of funds back to earlier note-issuing entities to repay earlier investors or to fund life settlement obligations (the latter occurring prior to Centurion obtaining a credit facility for premium payments in December 2018); and (4) accounting for the large number of back-to-back transactions each day. *Id*. ¶¶ 94, 207.

Plaintiff also alleges Schwartz performed work for specific note-issuing entities by negotiating repayment timetables with investors whose interest payments were past due, without fully disclosing that the SH Enterprise was essentially insolvent and without fully disclosing that these future payments were dependent on the SH Enterprise's ability to raise additional new capital or receive asset transfers from two other entities that were part of the SH Enterprise, which were also purportedly facing insolvency issues. *Id*.

### III. Plaintiff's Counts

Based on the above allegations, Plaintiff alleges nine counts on behalf of herself and the Investor Class: I. Violation of Fla. Stat. § 517.07(1); II. Violation of Fla. Stat. § 517.12(1); III. Violation of Fla. Stat. § 517.301; IV. Breach of Fiduciary Duty; V. Negligence; VI. Violation of Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.103(1), (3)-(4), 772.104(1), 777.011, and 777.03(1)(a) ("Florida RICO"); VII. Conspiracy to Violate Florida RICO; VIII. Violation of 18 U.S.C. § 1962(a), (c)-(d) ("federal RICO"); and IX. Equitable Action for

Appointment of Receiver, for Accounting and for Disgorgement of Ill-Gotten Gains, Unjust Enrichment, and Constructive Trust.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

### I. Fraud

In his Motion, Schwartz claims that Plaintiff's Florida securities fraud claims under Fla. Stat. § 517.301 (Count III) and Florida and federal RICO claims (Counts VI, VII, and VIII) do not satisfy the heightened pleading requirement of Rule 9(b). Additionally, Schwartz argues that Plaintiff's securities fraud claims under Fla. Stat. § 517.07(1) and Fla. Stat. § 517.12(1) (Counts I and II) should be dismissed for failure to state a claim against Schwartz specifically. Due to the immense factual overlap, the Court will address these two grounds simultaneously.

### *i. Fla. Stat. § 517.301 and Florida and Federal RICO claims*

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." While circumstances constituting fraud or mistake must be pled with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff alleges violations of Florida securities law, which prohibits employing any scheme or artifice to defraud. *See generally* Fla. Stat. § 517.07. Further, Plaintiff's racketeering claims are predicated on mail and wire fraud. Am. Compl. ¶ 165. Thus, based on Eleventh Circuit precedent, the Amended Complaint must lay out "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). In *FindWhat Inc. Grp. v. FindWhat.com*, the Eleventh Circuit provided further guidance on these pleading requirements, stating:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

658 F.3d 1282, 1296 (11th Cir. 2011). Here, the Amended Complaint is clear as to the source of the alleged misrepresentations and omissions; when such misrepresentations and/or omissions were made; their content and the way they misled Plaintiff; and what Schwartz obtained as a consequence of the fraud.

Schwartz asserts that Plaintiff supposedly admitted he played no role in making the alleged misrepresentations and therefore Plaintiff has failed to meet her burden of pleading fraud with particularity. Mot. at 2-3. This assertion ignores the allegations in Plaintiff's Amended Complaint

that Schwartz played a key role in, and engaged in misconduct in furtherance of, the fraud committed on Plaintiff and the Investor Class. Schwartz claims that his role was "ministerial" or that he played only a "back-office" role. *See* Mot. at 2, 13-14, 16- 17. While this may ultimately be true, Plaintiff's Amended Complaint alleges Schwartz played a central role as a partner or member of a joint venture with his cohorts Seeman and Holtz, and committed misconduct as an essential participant in the scheme. Am. Compl. ¶¶ 1, 42-44, 90-101, 207, 210.

Specifically, Plaintiff alleges that "Mr. Seeman, Mr. Holtz, and Mr. Schwartz ('SH&S') created and operated a myriad of corporate entities" with Schwartz as the "untitled chief financial officer . . . focused on financials and accounting." Am. Compl. ¶ 1. Seeman, Holtz, and Schwartz together formed Centurion, which Schwartz managed, for the purpose of facilitating the purchase, holding, and servicing of the life settlement portfolio that was acquired with investor funds, and which was owned indirectly by the three conspirators in equal one-third membership interests. *Id*. ¶¶ 90-91. The funds raised by the note-issuing entities were transferred to Schwartz-controlled Centurion pursuant to supposed loan agreements—including loan agreements where the interest charged to Centurion was less than the interest on the face of the notes issued by the note-issuing entities. *Id*. ¶ 93.

As Plaintiff alleges, Schwartz commingled proceeds from this scheme and misappropriated investor funds to both operate and advance the goals of the SH Enterprise, and the SH Enterprise operated from shared common offices with shared common controlling ownership, shared common officers, and shared common employees. *Id*. ¶¶ 96-97. The partners then used the commingled funds to pay various expenses, including salaries and bonuses to the SH Enterprises' employees, agents, and/or affiliates. Am. Compl. ¶ 97.

This conduct is sufficient to allege a claim under Fla. Stat. § 517.301 and Florida and federal RICO. Liability for violations of Fla. Stat. § 517.301, as well as Fla. Stat. §§ 517.07 and

517.12, are remedied under Fla. Stat. § 517.211. Section 517.211(1) expressly provides that "[e]ach person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser . . . ." While Schwartz argues that liability cannot be extended to him because he did not make any misrepresentations, Florida courts have imposed liability on those who did not solicit the purchase from the purchaser. *Whigham v. Muehl*, 500 So. 2d 1374, 1380 (Fla. 1st DCA 1987).

In *Whigham*, an investor sued a promoter, his company, and his wife for violating Fla. Stat. § 517.301. The defendants appealed that "since Mrs. Muehl did not participate in the transaction, she cannot be held liable to Whigham." *Id*. However, the Court found that "[a]lthough the record reflects that Mrs. Muehl did not request funds from Whigham, it is clear she was active in the organization and ongoing affairs of the business," just as Schwartz allegedly was with the SH Enterprise. *Id*. "She did the banking, she was equal partner in the original business and an officer, director and stockholder in the corporation . . . . In addition, she received the benefit of Whigham's contributions to the business." *Id*. The court further held the wife's "conduct comes within the statutory meaning of one who 'aided in making the sale'" and was thus liable. *Id*. at 1380. Accordingly, even if Schwartz never made any affirmative misrepresentations to Plaintiff or the Investor Class or omitted material information he was required to disclose, Schwartz may be held liable under Fla. Stat. § 517.301 for the misrepresentations and omissions of his fellow partners in the SH Enterprise as alleged in the Amended Complaint.

Further, the Amended Complaint alleges that Schwartz is responsible for misrepresentations and material omissions he directly made to members of the Investor Class during renegotiations of the Note payment terms. Am. Compl. ¶ 94. Finally, the pleading particularity of these allegations can be easily imputed to Plaintiff's Florida and federal RICO

claims as Plaintiff alleges that this conduct also violated both the Florida and federal RICO statute. Specifically, Plaintiff alleges that the SH Enterprise "constituted a single association-in-fact enterprise within the meaning of 18 U.S.C. § 1962(a), (c)-(d), as the term is defined in 18 U.S.C. § 1961(4)." Am. Compl. ¶ 202. An association-in-fact enterprise like the one alleged here is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The allegations that Schwartz was an essential member of the scheme to defraud, as well as the conduct of the entity described above, is sufficient at this stage of the proceedings. Thus, Plaintiff's claim under Fla. Stat. § 517.301, as well as Plaintiff's Florida and federal RICO claims, do not warrant dismissal under Rule 9(b).

### ii. Fla. Stat. § 517.07(1) and Fla. Stat. § 517.12(1)

Fla. Stat. § 517.07(1) prohibits the sale of unregistered securities while Fla. Stat. § 517.12(1) prohibits dealers who are not registered to sell securities from selling registered or unregistered securities. Schwartz claims that these counts must be dismissed as to him specifically because "Mr. Schwartz was merely a back-room finance employee at Centurion, and had no part in the sales and offering of securities at the PPEs where Plaintiff allegedly invested." Mot. at 13. Based on the aforementioned conduct, and the court's holding in *Whigham*, 500 So. 2d at 1380, both the allegations that Schwartz was one of the principal architects in the sale of the notes by the SH Enterprise, and the fact that he negotiated the repayment terms of the note, is sufficient to plausibly allege a violation of Fla. Stat. § 517.07(1) and Fla. Stat. § 517.12(1). Accordingly, these counts survive Schwartz's Motion to Dismiss.

## II. Tortious Misconduct

In addition to Schwartz's argument that Plaintiff has failed to properly plead her claims under Florida securities law, he alleges that Plaintiff has failed to properly plead the element of breach in the claims for breach of fiduciary duty and negligence. Once again, based on the alleged

conduct of the SH Enterprise, as well as Schwartz's particular role in the alleged scheme, this argument fails.

### i. Fiduciary Duty

Regarding the fiduciary duty claim, Schwartz argues that the "Complaint does not allege that Mr. Schwartz, in an individual capacity, formed any express agreement with Plaintiff or with any other investor." Mot. at 16. An examination of the law relating to the establishment and breach of fiduciary duty clearly precludes this argument. "The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor." *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987); *Abramowitz v. Westport Nat'l Bank*, No. 9-60510, 2009 WL 10667468, at *8 (S.D. Fla. Nov. 5, 2009) (finding plaintiffs stated breach of fiduciary duty claims under Florida law against investment advisors who managed money that was invested in Ponzi scheme). This principle also applies where a plaintiff pleads that a defendant was not a registered broker. *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1337-38 (S.D. Fla. 2018) (the fact that defendants were not registered brokers did not "preclude Defendants from being charged with the same fiduciary duties that apply to all individuals who sell securities.").

Under Florida law, "[a] fiduciary relationship may be either express or implied." *Hogan v. Provident Life and Accident Ins. Co.,* 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (citing *Maxwell v. First United Bank,* 782 So. 2d 931, 933 (Fla. 4th DCA 2001)). When a fiduciary duty is implied, it is "'premised upon the specific factual situation surrounding the transaction and the relationship of the parties' and exist[s] where 'confidence is reposed by one party and a trust accepted by the other.'" *Id*. (internal citations omitted); *see also Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F. Supp. 2d 1064, 1071 (S.D. Fla. 2003). "In order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise,

counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991) (citing *Cripe v. Atlantic First Nat. Bank*, 422 So. 2d 820 (Fla. 1982)).

Plaintiff alleges Schwartz performed work for specific note-issuing entities by negotiating repayment timetables with investors whose interest payments were past due, without fully disclosing that the SH Enterprise was essentially insolvent and without fully disclosing that these future payments were dependent on the SH Enterprise's ability to raise additional new capital or receive asset transfers from two other entities that were part of the SH Enterprise. Am. Compl. ¶¶ 94, 207. This negotiation, coupled with the alleged omissions and the fact that Schwartz was receiving payment from Seeman Holtz, is enough to plausibly allege both the existence and breach of fiduciary duty at this stage of the proceedings.

### ii. Negligence

Schwartz's argument related to Plaintiff's negligence claim falls victim to the same infirmities. To state a negligence claim under Florida law, a plaintiff must plead facts to plausibly show: "(1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." *Estate of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 788 (Fla. 2d DCA 2010) (citation omitted). Whether a duty exists is a question of law for the Court to determine. *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

In addition to the allegations raised generally, the Amended Complaint alleges that Schwartz (1) operated Centurion without disclosing Seeman's and Holtz's roles to the public; (2) oversaw the deposit of incoming investor funds into the note-issuing entities' accounts; (3) oversaw the rapid transfer of funds thereafter from the note-issuing entities' accounts to Centurion's account via wire transfers; (4) oversaw the rapid disbursement of funds back to earlier note-issuing entities to repay earlier investors or to fund life settlement obligations (the latter

occurring prior to Centurion obtaining a credit facility for premium payments in December 2018); and (5) accounted for the large number of back-to-back transactions each day. Am. Compl. ¶¶ 94, 207. The Amended Complaint further alleges that Schwartz negotiated repayment timetables with members of the Investor Class whose interest payments were past due, without fully disclosing that the SH Enterprise was essentially insolvent. *Id.*

The Court finds that these allegations are sufficient to establish both duty and breach for Plaintiff's negligence claim (the only two elements challenged by Schwartz). Accordingly, Plaintiff's negligence claim survives Schwartz's Motion to Dismiss.

### III. Shotgun Pleading

Lastly, Schwartz claims that the Amended Complaint should be dismissed in its entirety because it is an impermissible shotgun pleading. Mot. at 18. Specifically, Schwartz states that "[n]one of the Complaint's nine counts specify the role that Mr. Schwartz played in the particular statutory violation or breach." *Id.* Based on the Eleventh Circuit's standard for identifying shotgun pleadings, as well as the role Schwartz allegedly played in the fraudulent scheme, this argument fails.

"The essence of a shotgun pleading is 'that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Vujin v. Galbut*, 836 F. App'x 809, 814 (11th Cir. 2020) (quoting *Anderson v. District Bd of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). The Eleventh Circuit has identified four types of pleadings that produce this problem: (1) "complaints that contain multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "complaints that are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) "complaints that do not separate each cause of action or claim for relief into

separate counts"; and (4) "complaints that assert claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 815 (quoting *Weiland v. Palm Beach Cty. Sherriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)) (internal quotations omitted).

Based on the aforementioned criteria, Plaintiff's Amended Complaint does not qualify as a shotgun pleading. Although many of Plaintiff's claims are asserted against all Defendants, Plaintiff has alleged the factual basis for Schwartz's liability under each cause of action. Once again, Plaintiff specifically alleges that Schwartz (1) operated Centurion without disclosing Seeman's and Holtz's roles to the public; (2) oversaw the deposit of incoming investor funds into the note-issuing entities' accounts; (3) oversaw the rapid transfer of funds thereafter from the note-issuing entities' accounts to Centurion's account via wire transfers; (4) oversaw the rapid disbursement of funds back to earlier note-issuing entities to repay earlier investors or to fund life settlement obligations (the latter occurring prior to Centurion obtaining a credit facility for premium payments in December 2018); and (5) accounted for the large number of back-to-back transactions each day. Am. Compl. ¶¶ 94, 207. It is these allegations, coupled with the fact that Schwartz negotiated repayment tables with members of the investor class, that imputes liability to Schwartz himself.

In his argument that the Amended Complaint constitutes an impermissible shotgun pleading, Schwartz includes a one-off paragraph alleging the Plaintiff has failed to adequately plead Count IX, which levies an equitable action based on unjust enrichment. However, the Court finds that Plaintiff has adequately pleaded her unjust enrichment claim. The doctrine of unjust enrichment "applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without

paying for it." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1234-35 (S.D. Fla. 2021) (*citing Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005)).

Schwartz takes issue solely with the first element, arguing Plaintiff has only alleged "that Mr. Schwartz was a salaried employee paid to do a job" and thus Plaintiff has failed to allege she conferred a benefit on Schwartz. Mot. at 19. Contrary to Schwartz's assertion, this is not the extent of Plaintiff's allegations. Specifically, Plaintiff alleges that Schwartz created a myriad of corporate shell companies, exercised control over those entities, commingled funds among those entities (which were invested by Plaintiff and the Investor Class on the basis of Schwartz's, his co-defendants', and his co-defendants' agents' misrepresentations/omissions), and "received unjust enrichment from the commingled proceeds . . . in the form of salaries and other distributions through Seeman Holtz, Seeman Holtz Consulting, and other entities operated or controlled by [Defendants Seeman, Holtz, and Schwartz]." Am. Compl. ¶ 98. These allegations are undoubtedly sufficient to support a claim for unjust enrichment at this stage of the proceedings.

## CONCLUSION

Ultimately, the allegations contained in Plaintiff's Amended Complaint are sufficient to plausibly support Plaintiff's nine counts. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [ECF No 80] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 1st day of September, 2022.

　　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　**RODOLFO A. RUIZ II**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**