IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case Number: 21-cv-61179-RUIZ-STRAUSS

FANNY B. MILLSTEIN,

        Plaintiff,

  v.

MARSHAL SEEMAN, et al.,

        Defendants.
                                          /

**THE CLASS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

The Class respectfully moves for final approval of the Settlement set forth in the Settlement Agreement attached as Exhibit 1 ("Settlement" or "Agreement"), on an unopposed basis, which will resolve all claims against Defendant Seeman Holtz Property And Casualty, LLC f/k/a Seeman Holtz Property Casualty, Inc. ("SHPC") in this Action.[1]  "The compromise of complex litigation is encouraged by the courts and favored by public policy." 4 *Newberg on Class Actions* § 11:41 (4th ed.). The "strong judicial policy" in favor of settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) *aff'd sub nom Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990). "Moreover, where, as here, the [settlement] previously has been preliminarily approved, the [settlement] is 'presumptively reasonable.'" *Ass'n for Disabled Ams. Inc. v. Amoco Oil, Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002).

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement and/or the Amended Complaint filed in this action (DE 55).

The Parties' Settlement comports with these principles and deserves final approval. The Class maintained Eric Holtz, Marshal Seeman and Brian J. Schwartz created and opened the PL Entities as part of a scheme and racketeering enterprise (the "SH Enterprise"), which included SHPC, to defraud Plaintiff and all others similarly situated. The Plaintiff alleged that the conduct of the SH Enterprise, its principals and co-conspirators violated, among others, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Florida Securities and Investor Protection Act, and Florida RICO. SHPC denied the Plaintiff's claims. Absent the Settlement, SHPC could have utilized its substantial resources to protract the dispute through years of trial, post-trial, and appellate litigation before the Class could enjoy any recovery, if at all.

The Settlement received an overwhelmingly positive response from the Class. Despite 1,489 claims from 998 individualized claimants, only 22 individual claimants opted out of the class. (Decl. of Daniel Stermer ¶8 (hereinafter referred to as the "Stermer Declaration ¶ __".) A copy of the Stermer Declaration is attached as **Exhibit 1**. This positive response further compels final approval. Class Counsel, therefore, respectfully request that this Court grant final approval of the Settlement.

I. **HISTORY OF THE LITIGATION**

    A. **FACTUAL BACKGROUND**

        1. **Procedural History**

The Plaintiff brought this lawsuit seeking monetary damages based on its claim that SHPC was an instrumentality of, or participated in, a RICO enterprise executed by SH&S. The Plaintiff alleged that as a result of this participation, the SH Enterprise transferred more than $5,000,000.00 away from the SH Enterprise to SHPC, whose ownership was transferred from the control of the SH Enterprise to a third party. SHPC vigorously denied the Class' allegations of wrongdoing in discussions with Plaintiff's counsel, claiming that its owners foreclosed on SHPC as pledged

collateral for certain extensions of credit made to SH&S for the acquisition of insurance companies by SHPC Holdings I, LLC, which owned SHPC.

### 2. Settlement Negotiations

The Parties engaged in direct negotiation, including an in-person meeting with counsel for SHPC and other Defendants prior to filing the Complaint in this action. Subsequent to that meeting, the Parties have had numerous discussions on issues concerning liability and the amount of damages, based on the amount transferred to SHPC. The Parties agreed to extend deadlines for SHPC to respond to the Complaint in order to try and reach a suitable settlement. On July 20, 2022, the Parties agreed to basic terms of a settlement and have executed the proposed Settlement Agreement, attached as **Exhibit 1**.

### B. SUMMARY OF THE SETTLEMENT TERMS

The Settlement's terms are detailed in the Settlement Agreement attached as **Exhibit 2**. The following is a summary of the material terms of the Settlement.

### 1. The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons who purchased or held a beneficial interest in one or more of the Notes within the applicable limitations period. Excluded from the Class are Defendants, any entity in which any Defendant had a controlling interest, Defendants' officers, directors, legal representatives, successors, and assigns, and Defendants' immediate family members.

(DE 55 at 25).

### 2. Monetary Relief for the Benefit of the Class

The Settlement creates a common fund of $650,000.00 ("Settlement Fund") for the Settlement Class. The Settlement Fund will, with Court approval, be used to pay Settlement Class

Members' damages in individual Settlement Awards, the Class' costs and attorneys' fees, and the costs of notice and claims administration. All Settlement Class Members had until October 31, 2022, to object to, or opt out of, the Settlement.

Thus, all Settlement Class Members who did not opt out of the Settlement will be eligible to receive a distribution from the Settlement Fund. As discussed below, Class Counsel has recommended through this Motion that the Court authorize distributing net settlement funds through the Settlement Administrator, Daniel J. Stermer, who is the Corporate Monitor in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida in Case No. 50-2021-CA-008718-XXX-MB (the "Settlement Administrator" or "Corporate Monitor"), to save costs from the administration of the Settlement Funds. The Settlement Administrator has already established a claims process through the Corporate Monitorship, and the net settlement proceeds from this action will be added to the funds that will be distributed to the Class Members through the Corporate Monitorship. The Settlement Administrator has indicated that each investor will receive a pro rata share, based on principal losses in the Notes, of the net settlement proceeds from this action, which will be added to any funds used for distribution from the Corporate Monitorship. Each Settlement Class Members' Settlement Award will be determined by the Settlement Administrator who will be responsible to approve claims and distribute proceeds from the Settlement along with all amounts recovered by the Corporate Monitor.

### 3. Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will release the Defendant and its past, current and future owners, directors, officers, affiliates, independent contractors, secured lenders, Lender Parties, and professionals, and their employees, officers, directors, independent contractors, and professionals of any and all past, present or future claims, liabilities, demands, causes of action, obligations, controversies,

executions, or lawsuits of the Settlement Class Members as of the date of Final Approval, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law, whether known or unknown, whether brought or could have been brought in the Litigation, and whether brought in an individual, representative, or any other capacity. Released Parties do not include Marshal Seeman, Eric Holtz and the Estate of Eric Holtz, or Brian Schwartz, and this Settlement Agreement and Release provides no benefits to any of them.

### 4. Settlement Class Notice

Pursuant to the Preliminary Approval Order [D.E. 119], the Settlement Administrator implemented the Notice Program, utilizing the contact information the Corporate Monitor already had about Settlement Class Members. Stermer Declaration ¶4. The Notice Program provided notice via direct notice by E-Mailed Notice ("E-Mailed Notice") to Settlement Class Members including the "Long Form" notice with details about the litigation and Settlement ("Long Form Notice,") [D.E. 113-2], that was also be available on the Corporate Monitorship website (https://nationalseniormonitorship.com) from September 22, 2022. Stermer Declaration ¶5. For those persons with whom the Settlement Administrator had no e-mail connection, the Notice Program provided direct notice by First Class U.S. Mail, postage prepaid, to Settlement Class Members with the same "Long Form" notice (the "Mailed Notice"). *Id.* ¶6. The Settlement Administrator sent the E-Mailed Notices and Mailed Notices on September 22, 2022. *Id.* ¶7.

### 5. Opt Outs And Objections

Settlement Class Members were given until October 31, 2022 to either opt out or object to the Settlement. The opt out and objection procedures were included on the website https://nationalseniormonitorship.com and objections were required to be filed with the Court on or before October 31, 2022. https://706883.p3cdn1.secureserver.net/wp-content/uploads/2022/09/2022_9_20-Long-Form-Notice.pdf. No Settlement Class Member

objected to the Settlement, and 22 Settlement Class members opted out. (*Id.*)

### 6. Attorneys' Fees and Costs

Class Counsel filed their Unopposed Motion for Attorneys' Fees on October 17, 2022, requesting 30% of the Settlement Fund or $195,000. [D.E. 123]. SHPC does not object to this fee request nor does SHPC object to Class Counsel's request for reimbursement of $3,663.23 in documented litigation expenses. *Id.* The Parties negotiated attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

## II. ARGUMENT

### A. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

"A class action settlement [] should be approved so long as it is fair, adequate and

reasonable and is not the product of collusion between the parties." *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (internal quotation omitted). When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit look to six factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement. *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1345 (S.D. Fla. 2011) (citing *Leverso v. South Trust Bank of Al., Nat. Assoc.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Bennett,* 737 F.2d at 986).

"In evaluating these considerations, the Court must not try the case on the merits." *Access Now, Inc.*, 2002 WL 1162422, at *4 (citing *Cotton*, 559 F.2d at 1330). "Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330). Also, "[i]n evaluating a settlement's fairness, 'it should not be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of the settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Amoco*, 211 F.R.D. at 467 (quoting *Cotton*, 559 F.2d at 1330). "Above all, the court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.* (internal quotation omitted). As demonstrated below, this Settlement fully meets these standards for final approval.[2]

---

[2] In addition to the *Bennett* factors, in December 2018, Fed. R. Civ. P. 23 was amended to include new factors that Courts may consider in the final approval process. This Motion addresses those factors below, and all of those factors weigh in favor of granting final approval of the Settlement.

1. **The Settlement Is Free From Fraud And Collusion (*Bennett Factor*), Is The Product of Good Faith, Informed And Arm's Length Negotiations (Rule 23(e)(2)(B)), And The Class Representative Adequately Represented The Class' Interests (Rule 23(e)(2)(A)).**

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Braynen v. Nationstar Mortgage*, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) (internal quotation omitted). The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this lawsuit. There are no indications that the Settlement involves any fraud or collusion, and there was none. Throughout the litigation, the Parties were in diametric opposition. The Class believed strongly that the claims against SHPC were strong, and SHPC denied any liability and exhibited a willingness to litigate this case vigorously. This record of salient adversity confirms that the Parties negotiated the Settlement at arms-length and negates any finding of fraud or collusion.

In negotiating this Settlement, Class Counsel conducted a thorough investigation and analysis of the Class' claims. Class Counsel's review of that investigation, including the limited amount of transfers made to SHPC by the SH Enterprise, made counsel's settlement negotiations well informed. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation"). Class Counsel was also well-positioned to evaluate the strengths and weaknesses of the Class' claims, as well as the appropriate basis upon which to settle them, as a result of work on this case from inception.

2. **The Complexity, Expense, And Likely Duration Of The Litigation (*Bennett* Factor) And The Costs, Risks, Delay Of Trial And Appeal Support Final Approval Of The Settlement (Rule 23(e)(2)(C)(i).**

Courts have found this factor weighs in favor of settlement approval where the litigation

involves numerous class members and significant time and expense. *See, e.g., Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014) (holding this factor favored settlement approval where "[c]ontinuing to litigate the[] claims would have been time-consuming and expensive" and "even in plaintiffs were to prevail, class certification proceedings, a class trial and the appellate process could go on for years."); *see also In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1345 ("The claims and defenses are complex; litigating them has been difficult and time consuming. Although this litigation has been pending for more than two years, recovery by any means other than settlement would require additional years of litigation in this Court and the appellate courts.").

The Class was confident in the strength of its case, but also pragmatic in its awareness of the various defenses available to SHPC, and the risks inherent in trying this lawsuit. First, Class Counsel filed this action with the understanding that the SH Enterprise transferred several million dollars to SHPC, which is the basis for liability. Second, SHPC was owned by SHPC Holdings and was the collateral used by its principals, SH&S, for the acquisition of insurance companies for the "Seeman Holtz Family of Companies." SHPC was in default, and the current owner of SHPC foreclosed on the loan. Third, the Corporate Monitor was also pursuing the funds transferred to SHPC and resolved that claim with SHPCs' current owner. Based on these issues, Class Counsel determined that the Settlement reached with SHPC outweighs the potential benefits from continued litigation of this lawsuit, given the risks and the relatively modest amount of transferred funds. Even if the Class did prevail at trial, after expending significant resources in discovery and litigation, it is likely that the payment of such expenses would significantly reduce the net recovery for members of the Class. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides

relief to Settlement Class Members without any further delay.

Furthermore, the traditional means for individually handling claims like those at issue here would tax the court system and require a massive expenditure of public and private resources. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. The costs and expenses associated with a trial would have been enormous, including the costs and fees associated with the Class' experts and the presentation of evidence. These considerations militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed Weigh In Favor Of Final Approval Of The Settlement (*Bennett* Factor).

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. The claims against SHPC (and only SHPC) were resolved before SHPC filed a motion to dismiss or answer. However, the resolution was the product of negotiations between extremely experienced counsel on both sides, and Class Counsel was informed by information received from the Corporate Monitor. As a result, Class Counsel was extremely well-positioned to evaluate the strengths and weaknesses of the Class' claims and prospects for success at trial and on appeal.

### 4. The Probability Of Success On The Merits Weighs In Favor Of Final Approval Of The Settlement (*Bennett* Factor).

Under this factor, the Court considers "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1349 (internal quotation omitted). "[T]he Plaintiff's likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase*

*Bank, N.A.,* 297 F.R.D. 683, 692 (S.D. Fla. 2014) (internal quotation omitted).

Although Class Counsel was confident about the merits of the case, there were substantial hurdles in prosecuting this case through trial and appeal. The Class' chances for success at trial turned on many factors, including the Court finding: (1) SHPC participated in a RICO enterprise; and (2) the Class satisfied RICO's proximate cause element. SHPC was prepared to litigate these issues, which exposed the Class to the risk of losing any recovery, as well as the additional expenses invested in time and resources. Even if the Class prevailed at trial, moreover, the prospect of an appeal posed an additional risk to the Class' ultimate success on the merits. Under those circumstances, the Class would have expended significant time and expense only to obtain no recovery.

On the other hand, this Settlement guarantees some relief for the Class without any further delay. Given the facts discussed above, including the relatively modest amount of transfers to SHPC, the prospect of recovering more than the Settlement Amount here after prolonged litigation and an unpredictable trial and appeal, did not outweigh these benefits. *See, e.g., In re Soderstrom*, 477 B.R. 249, 256 (Bankr. M.D. Fla. 2012) ("In this case, under these circumstances, a bird in the hand is worth two in the bush.") Accordingly, this factor weighs in favor of final approval.

### 5. **The Range Of Possible Recovery Weighs In Favor Of Final Approval Of The Settlement (*Bennett* Factor).**

"In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1350 (internal quotations omitted) (approving settlement that provided recovery of 9% to 45% of potential recovery that could have been obtained through trial). Indeed, "[a] settlement can be satisfying even if it amounts to a

hundredth or even a thousandth of a single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542; *see also Perez v. Asurion Corp.,* 501 F.Supp.2d 1360, 1380-81 (S.D. Fla. 2007) ("The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."). It is important to weigh the benefits Settlement Class Members will receive from the settlement against the risks of moving forward and recovering nothing. *Perez,* 501 F.Supp.2d at 1381 ("These benefits to Defendants approximately 40 million customers – when viewed against the backdrop of all of the uncertainties, risks, and problems that have surfaced in this litigation . . . and the reasonable possibility that Plaintiffs would not have recovered anything if they had proceeded to trial – weigh heavily in favor of approving this Settlement.").

The Settlement is reasonable. In fact, the Court has already found that the Settlement was "within the range of reasonableness and possible judicial approval." [D.E. 119 at 7.] Given the Parties' respective positions, the limited amount of transfers to SHPC, SHPC's settlement with the Corporate Monitor for a significant portion of the allegedly commingled funds SHPC held and the expenses and time required to prove disputed liability and damages, the Settlement represents an outstanding result for the Class, without the attendant risk of trial and appeals and the associated delay of both, and weighs heavily in favor of final approval of the Settlement.

> **6.     Class Counsel Have Evaluated The Strengths And Weaknesses Of Their Claims And Support Approval Of This Settlement And There Is No Opposition From The Class (*Bennett* Factor).**

The endorsement of well informed, experienced class action attorneys is strong support for the final approval of a settlement. *Warrant v. City of Tampa,* 693 F.Supp. 1051, 1060 (M.D. Fla. 1988). A court should give great weight to the recommendations of counsel for the parties, given their considerable experience in the litigation. *Id.*; *see also In re Domestic Air Trasp.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. The trial judge, absent

fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F.Supp. 660, 672 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement"). Class Counsel is well apprised of the strengths and weaknesses of the Class' claims. Relying on their knowledge of the strengths and weaknesses of this litigation, Class Counsel collectively and unequivocally believe that this Settlement is in the best interests of the Class.

Furthermore, "in determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." *Lipuma*, 406 F.Supp.2d 1324. "Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding the settlement was unreasonable." *Lee v. Ocwen Loan Servs.,* 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (internal quotations omitted); *Gavaerts v. TD Bank, N.A.,* 2015 WL 6751061, at *8 (S.D. Fla. Nov. 5, 2015) ("[T]he Court also finds it telling that of the 1,122 Settlement Class Members, none objected to, or opted out of, the Settlement."). Here, no Settlement Class Member objected to the Settlement and only 22 opted out of it. (Ex. 1 ¶¶7-8). The reactions of Settlement Class Members, therefore, confirm that the Settlement is fair, adequate, and reasonable.

      **7.** **The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class, Including The Method Of Processing Class Member Claims (Rule 23(e)(2)(C)(ii)) And The Proposal Treats Class Members Equitably Relative To Each Other (Rule 23 (e)(2)(D)) And Support Final Approval.**

Courts have concluded that where the settlement terms apply equally to all Class members the "method of distributing relief to the class" will effectively benefit every member of the Class and treat them equitably relative to each other. *Gumm v. Ford*, 2019 WL 479506, at *6 (M.D. Ga.

Jan. 17, 2019). Here, each Settlement Class Member is able to receive a pro rata share of the Settlement Fund, based on each Class Member's investment, which damages and liability Defendants dispute. All Settlement Class Members are, therefore, treated substantially equally and these factors weigh in favor of a finding that the Agreement is fair to and adequate for all Settlement Class Members.

### 8. The Terms Of Any Proposed Award Of Attorney's Fees, Including Timing of Payment (Rule 23(e)(2)(C)(iii)), Favor Granting Final Approval.[3]

Rule 23 requires a district court to assess "the terms of any proposed award of attorney's fees, including timing or payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). There are no "rigid limits" on attorney's fees but "the relief actually delivered to the Class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23 Advisory Comm.'s Note, 2018 amend. "[A]ttorneys' Fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the Class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991). "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* Therefore, "[t]he district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Waters v. Cook's Pest Control, Inc.* 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (internal quotations omitted). Nevertheless, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as

---

[3] Class counsel filed its Unopposed Motion for Attorneys' Fees, Costs, and Incentive Award on June 3, 2019, which it hereby incorporates by reference. [D.E.309].

a general rule, although even larger percentages have been awarded." *Id.*

Here, Class Counsel requested $195,000.00 or 30% of the Settlement Fund for attorneys' fees, an amount to which SHPC does not object. The Parties negotiated attorneys' fees only after reaching agreement on all other material terms of the Settlement. The payment of those fees is contingent upon the Court's granting final approval of the Settlement. The Settlement Agreement in this case provides some relief to the Settlement Class Members, and Class Counsel is entitled to attorneys' fees under RICO and applicable case law. *Camden I*, 946 F.2d at 774. Furthermore, considering the effort spent and risk taken by Class Counsel, an award of 30% of the common fund is below other attorneys' fees awards in this jurisdiction. *See Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33% attorneys' fees); *In re Managed Care Litig. v. Aetna,* 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding 35.5% attorneys' fees); *Cook's Pest Control*, 2012 WL 2923542, at 18 (awarding 35% attorneys' fees). Accordingly, Class Counsel's request for attorneys' fees weighs in favor of a finding that the Settlement Agreement is fair to and adequate for the Settlement Class Members.

### 9. Agreements Made In Connection With The Proposed Settlement (Rule 23(e)(2)(C)(iv)).

Rule 23 requires the parties to file with the Court "a statement identifying any agreement made in connection with" a proposed settlement. Fed. R. Civ. P. 23(e)(3). There are no other agreements with SHPC other than the Settlement, which weighs in favor of a finding that the Settlement Agreement is fair and adequate.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Class Counsel respectfully request that the Court: (1) finally certify the Settlement Class; and (2) grant final approval of the Settlement.

## **LOCAL RULE 7.1 CERTIFICATION**

Undersigned counsel certifies, as required by S.D. Fla. Local Rule 7.1, that moving counsel conferred with counsel for Defendant SHPC regarding the relief sought in this motion. Defendant SHPC does not oppose the relief sought in this motion.

Dated: December 13, 2022

| | |
|---|---|
| SALLAH ASTARITA & COX, LLC<br>*Co-Counsel for Plaintiff and the Class*<br>One Boca Place<br>2255 Glades Rd., Ste. 300E<br>Boca Raton, FL 33431<br>Tel.: (561) 989-9080<br>Fax: (561) 989-9020<br><br>/s/Joshua A. Katz, Esq.<br>**James D. Sallah, Esq.**<br>Fla. Bar No. 0092584<br>Email: jds@sallahlaw.com<br>**Joshua A Katz, Esq.**<br>Fla. Bar No. 0848301<br>Email: jak@sallahlaw.com | SILVER LAW GROUP<br>*Co-Counsel for Plaintiff and the Class*<br>11780 W. Sample Road<br>Coral Springs, FL 33065<br>Tel.: (954) 755-4799<br>Fax: (954) 755-4684<br><br>**Scott L. Silver, Esq.**<br>Fla. bar No. 095631<br>Email: ssilver@silverlaw.com<br>**Ryan A. Schwamm, Esq.**<br>Fla. Bar No. 1019116<br>Email: rschwamm@silverlaw.com<br>**Peter M. Spett, Esq., Of Counsel**<br>Fla. Bar No. 0088840<br>Email: pspett@silverlaw.com |
| MENZER & HILL, P.A.<br>*Co-Counsel for Plaintiff and the Class*<br>7280 W. Palmetto Park Rd., Ste. 103<br>Boca Raton, FL 33433<br>Tel.: 888-923-9223<br>Fax: 561-880-8449<br><br>**Gary S. Menzer, Esq.**<br>Fla. Bar No. 60386<br>Email: gmenzer@menzerhill.com<br>**Michael S. Hill, Esq.**<br>Fla. Bar No. 37068<br>Email: mhill@menzerhill.com | BUCKNER + MILES<br>*Co-Counsel for Plaintiff and the Class*<br>2020 Salzedo Street, Ste. 302<br>Coral Gables, Florida 33134<br>Tel.: (305) 964-8003<br>Fax: (786) 523-0585<br><br>**David M. Buckner, Esq.**<br>Fla. Bar No. 60550<br>Email: david@bucknermiles.com<br>**Brett E. von Borke, Esq.**<br>Fla. Bar No. 0044802<br>Email: vonborke@bucknermiles.com |

- 17 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system.

/s/ David M. Buckner
David M. Buckner, Florida Bar No. 0060550
david@bucknermiles.com