UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61179-RAR

FANNY B. MILLSTEIN,

      Plaintiff,

v.

ERIC HOLTZ, *et al.*,

      Defendants.

_____/

ORDER ON THE CLASS'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS SETTLEMENT AND
THE CLASS'S UNOPPOSED MOTION FOR ATTORNEYS' FEES

This matter is before the Court on the Class's Unopposed Motion for Final Approval of Class Settlement, [ECF No. 131], and the Class's Unopposed Motion for Attorneys' Fees and Expenses, [ECF No. 123]. As described in further detail below, the Settlement[1] provides relief to the Settlement Class, and its terms are within the range of reasonableness and consistent with applicable case law. Consequently, the Court grants final approval to the Settlement. Furthermore, the Court grants Class Counsel's unopposed fee request of $195,000.00 and the unopposed payment of Class Counsel's costs of $3,663.23.

I.     **HISTORY OF THE LITIGATION**

    A.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff brought this lawsuit seeking monetary damages based on its claim that SHPC was an instrumentality of, or participated in, a RICO enterprise executed by SH&S. Plaintiff alleged that as a result of this participation, the SH Enterprise transferred more than $5,000,000.00 away

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

from the SH Enterprise to SHPC, whose ownership was transferred from the control of the SH Enterprise to a third party. SHPC vigorously denied the Class's allegations of wrongdoing in discussions with Plaintiff's counsel, claiming that its owners foreclosed on SHPC as pledged collateral for certain extensions of credit made to SH&S for the acquisition of insurance companies by SHPC Holdings I, LLC, which owned SHPC.

As further described below, the Parties agreed to the material terms of a Settlement on June 20, 2022, and they finalized and executed the Settlement Agreement on August 5, 2022. The Class filed its Unopposed Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class and Notice to the Settlement Class on September 6, 2022, [ECF No. 113]. The Court held a hearing on the Class's Motion for Preliminary Approval of the Settlement on September 19, 2022, [ECF No. 118], and granted preliminary approval of the Settlement the same day, [ECF No. 119]. The Class filed its Unopposed Motion for Attorneys' Fees and Costs on October 17, 2022, [ECF No. 123], and its Motion for Final Approval of the Class Settlement on December 13, [ECF No. 131].

The Parties engaged in direct negotiation, including an in-person meeting with counsel for SHPC and other Defendants prior to filing the Complaint in this action. Subsequently, Plaintiff and SHPC had numerous discussions on issues concerning liability and the amount of damages, based on the amount transferred to SHPC. Plaintiff consented to extend deadlines for SHPC to respond to the Complaint in order to try and reach a settlement. On July 20, 2022, Plaintiff and SHPC agreed to basic terms of a settlement on behalf of Plaintiff and the Class and executed the proposed Settlement Agreement. [ECF No. 131-2].

B.      **SUMMARY OF THE SETTLEMENT TERMS**

The Settlement's terms are detailed in the Settlement Agreement.  *See* [ECF No. 131-2].

The following is a summary of the material terms of the Settlement.

1.      **The Settlement Class**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil

Procedure.  The Settlement Class is defined as:

> All persons who purchased or held a beneficial interest in one or more
> of the Notes within the applicable limitations period. Excluded from the
> Class are Defendants, any entity in which any Defendant had a
> controlling interest, Defendants' officers, directors, legal
> representatives, successors, and assigns, and Defendants' immediate
> family members.

[ECF No. 55] at 25.  Twenty-two persons opted out of the Settlement Class.

2.      **Monetary Relief for the Benefit of the Settlement Class**

The Settlement creates a common fund of $650,000.00 ("Settlement Fund") for the

Settlement Class.  The Settlement Fund will be used to pay Settlement Class Members' damages

in individual Settlement Awards, the Class's costs and attorneys' fees, and the costs of notice and

claims administration.  All Settlement Class Members had until October 31, 2022, to object to, or

opt out of, the Settlement.

Thus, all Settlement Class Members who did not opt out of the Settlement will be eligible

to receive a distribution from the Settlement Fund.  The Court authorizes distributing net settlement

funds through the Settlement Administrator, Daniel J. Stermer, who is the Corporate Monitor in

the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida in Case

No. 50-2021-CA-008718-XXX-MB ("Settlement Administrator" or "Corporate Monitor") pro

rata, based on principal losses in the Notes, of the net settlement proceeds from this action, which

will be added to any funds for distribution from the Corporate Monitorship.  Each Settlement Class

Members' Settlement Award will be determined by the Settlement Administrator who will be responsible to approve claims and distribute proceeds from the Settlement along with all amounts recovered by the Corporate Monitor.

### 3.    Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will release the Defendant and its past, current and future owners, directors, officers, affiliates, independent contractors, secured lenders, Lender Parties, and professionals, and their employees, officers, directors, independent contractors, and professionals (collectively "Released Parties") of any and all past, present or future claims, liabilities, demands, causes of action, obligations, controversies, executions, or lawsuits of the Settlement Class Members as of the date of Final Approval, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law, whether known or unknown, whether brought or could have been brought in the Litigation, and whether brought in an individual, representative, or any other capacity.  Released Parties do not include Marshal Seeman, Eric Holtz and the Estate of Eric Holtz, or Brian Schwartz, and this Settlement Agreement and Release provides no benefits to them.

### 4.    Settlement Class Notice

Pursuant to the Preliminary Approval Order, [ECF No. 119], the Settlement Administrator implemented the Notice Program using contact information the Corporate Monitor already had for the Settlement Class Members.  [ECF No. 131-1] ¶ 4.  The Notice Program provided direct notice by e-mail ("E-Mailed Notice") to Settlement Class Members.  The E-Mailed Notice included the Long Form Notice with details about the litigation and Settlement ("Long Form Notice") [ECF No. 113-2], which was also available on the Corporate Monitorship website (https://nationalseniormonitorship.com) beginning September 22, 2022. [ECF No. 131-1] ¶ 5. For Settlement Class Members for whom the Settlement Administrator had no e-mail address, the

Notice Program provided the Long Form Notice by First Class U.S. Mail, postage prepaid ("Mailed Notice").  *Id.* ¶ 6.  The Settlement Administrator sent the E-Mailed Notices and Mailed Notices on September 22, 2022.  *Id.* ¶ 7.

### 5.      Opt Outs and Objections

Settlement Class Members were given until October 31, 2022 to either opt out or object to the Settlement.   The opt out and objection procedures were included on the website https://nationalseniormonitorship.com and objections were required to be filed with the Court on or before October 31, 2022.   https://706883.p3cdn1.secureserver.net/wp-content/uploads/2022/09/2022_9_20-Long-Form-Notice.pdf.   No Settlement Class Member objected to the Settlement, and twenty-two Settlement Class members opted out.  [ECF No. 131-2] ¶ 8.

### 6.      Attorneys' Fees and Costs

Class Counsel filed their Unopposed Motion for Attorneys' Fees on October 17, 2022, requesting 30% of the Settlement Fund or $195,000.  [ECF No. 123].  SHPC does not object to this fee request nor does SHPC object to Class Counsel's request for reimbursement of $3,663.23 in documented litigation expenses.  *Id.*  The Parties negotiated attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

## II.    ANALYSIS

### A.      LEGAL STANDARD FOR FINAL APPROVAL.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is

the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

"A class action settlement [] should be approved so long as it is fair, adequate and reasonable and is not the product of collusion between the parties." *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (internal quotation omitted).  When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit look to six factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (citing *Leverso v. South Trust Bank of Al., Nat. Assoc.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Bennett,* 737 F.2d at 986).

"In evaluating these considerations, the Court must not try the case on the merits." *Access Now, Inc.*, 2002 WL 1162422, at *4 (citing *Cotton*, 559 F.2d at 1330).  "Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330).  Also, "[i]n

evaluating a settlement's fairness, 'it should not be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement 'justify each term of the settlement against a hypothetical or speculative measure of what concessions might [be] gained.'"  *Amoco*, 211 F.R.D. at 467 (quoting *Cotton*, 559 F.2d at 1330).  "Above all, the court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Id.* (internal quotation omitted).  As demonstrated below, this Settlement meets these standards for final approval.[2]

        **1.**        **The Settlement is Free from Fraud and Collusion (*Bennett* Factor), is the Product of Good Faith, Informed and Arm's Length Negotiations (Rule 23(e)(2)(B)), and the Class Representative Adequately Represented the Class's Interests (Rule 23(e)(2)(A)).**

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."  *Braynen v. Nationstar Mortgage*, No. 14-CV-20726, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) (internal quotation omitted).  The Settlement here is the result of intensive, arm's-length negotiations among experienced attorneys who are familiar with class action litigation and the legal and factual issues of this lawsuit.  There are no indications that the Settlement involves any fraud or collusion.  Throughout the litigation, the Parties were in diametric opposition.  The Class believed strongly that the claims against SHPC were strong, and SHPC denied any liability and exhibited a willingness to litigate this case vigorously.  This record of salient adversity confirms that the Parties negotiated the Settlement at arms-length and negates any finding of fraud or collusion.

Class Counsel conducted a thorough investigation and analysis of the Class's claims.  Class Counsel's review of that investigation, including the limited number of transfers made to SHPC

---

[2] In addition to the *Bennett* factors, in December 2018, Fed. R. Civ. P. 23 was amended to include new factors that courts may consider in the final approval process.  This Order addresses those factors below and the Court finds that all of those factors weigh in favor of granting final approval of the Settlement.

by the SH Enterprise, made counsel's settlement negotiations well informed.  *See Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation.").  Class Counsel was also well-positioned to evaluate the strengths and weaknesses of the Class's claims, as well as the appropriate basis upon which to settle them, as a result of work on this case from inception.  Accordingly, the Court finds that these factors weigh in favor of granting final approval of the Settlement.

> **2.** **The Complexity, Expense, and Likely Duration of the Litigation (*Bennett* Factor) and the Costs, Risks, Delay of Trial and Appeal (Rule 23(e)(2)(C)(i)) Support Final Approval of the Settlement.**

Courts have found this *Bennett* factor weighs in favor of settlement approval where the litigation involves numerous class members and significant time and expense.  *See, e.g.*, *Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014) (holding this factor favored settlement approval where "[c]ontinuing to litigate the[] claims would have been time-consuming and expensive" and "even if plaintiffs were to prevail, class certification proceedings, a class trial and the appellate process could go on for years."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 ("The claims and defenses are complex; litigating them has been difficult and time consuming.  Although this litigation has been pending for more than two years, recovery by any means other than settlement would require additional years of litigation in this Court and the appellate courts.").

The Class was confident in the strength of its case but also pragmatic in its awareness of the various defenses available to SHPC and the risks inherent in trying this lawsuit.  First, Class Counsel filed this action with the understanding that the SH Enterprise transferred several million dollars to SHPC, which is the basis for liability.  Second, SHPC was owned by SHPC Holdings and was the collateral used by its principals, SH&S, for the acquisition of insurance companies for

the "Seeman Holtz Family of Companies."  SHPC was in default, and the current owner of SHPC foreclosed on the loan.  Third, the Corporate Monitor was also pursuing the funds transferred to SHPC and resolved that claim with SHPCs' current owner.  Based on these issues, Class Counsel determined that the Settlement reached with SHPC outweighs the potential benefits from continued litigation of this lawsuit, given the risks and the relatively modest amount of transferred funds.  Even if the Class did prevail at trial, after expending significant resources in discovery and litigation, it is likely that the payment of such expenses would significantly reduce the net recovery for members of the Class.  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1332 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides relief to Settlement Class Members without further delay.

Furthermore, the traditional means for individually handling claims like those at issue here would tax the court system and require a massive expenditure of public and private resources. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  The costs and expenses associated with a trial would have been enormous, including the costs and fees associated with the Class's experts and the presentation of evidence.  These considerations militate heavily in favor of the Settlement.  *See Behrens*, 118 F.R.D. at 542.  As a result, the Court finds that Class Counsel was well-positioned to evaluate the strengths and weaknesses of the Class's claims and prospects for success at trial and on appeal.  Accordingly, this factor favors final approval of the Settlement.

### 3.      The Stage of the Proceedings and the Amount of Discovery Completed Weigh in Favor of Final Approval of the Settlement (*Bennett* Factor).

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and

weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.  The claims against SHPC (and only SHPC) were resolved before SHPC filed a motion to dismiss or answer.  However, the resolution was the product of negotiations between extremely experienced counsel on both sides, and Class Counsel was informed by information received from the Corporate Monitor.  As a result, Class Counsel was well-positioned to evaluate the strengths and weaknesses of the Class's claims and prospects for success at trial and on appeal.  Accordingly, the Court finds this factor weighs in favor of final approval.

### 4.   The Probability of Success on the Merits Weighs in Favor of Granting Final Approval of the Settlement (*Bennett* Factor).

Under this factor, courts consider "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1349 (internal quotation omitted).  "[T]he Plaintiff's likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (internal quotation omitted).

Although Class Counsel was confident about the merits of the case, there were substantial hurdles in prosecuting this case through trial and appeal.  The Class's chances for success at trial turned on many factors, including the Court finding that: (1) SHPC participated in a RICO enterprise; and (2) the Class satisfied RICO's proximate cause element.  SHPC was prepared to litigate these issues, which exposed the Class to the risk of losing any recovery, as well as the additional expenses invested in time and resources.  Even if the Class prevailed at trial, the prospect of an appeal posed an additional risk to the Class's ultimate success on the merits.  Under those circumstances, the Class would have expended significant time and expense to obtain no recovery.

On the other hand, this Settlement guarantees some relief for the Class without further delay.  Given the facts discussed above, such as the relatively modest number of transfers to SHPC,

the prospect of recovering more than the Settlement Amount here after prolonged litigation and an unpredictable trial and appeal did not outweigh the benefits. *See, e.g.*, *In re Soderstrom*, 477 B.R. 249, 256 (Bankr. M.D. Fla. 2012) ("In this case, under these circumstances, a bird in the hand is worth two in the bush."). Accordingly, the Court finds this factor weighs in favor of final approval.

### 5.   The Range of Possible Recovery Weighs in Favor of Final Approval of the Settlement (*Bennett* Factor).

"In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350 (internal quotations omitted) (approving settlement that provided recovery of 9% to 45% of potential recovery that could have been obtained through trial). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380–81 (S.D. Fla. 2007) ("The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."). It is important to weigh the benefits Settlement Class Members will receive from the Settlement against the risks of moving forward and recovering nothing. *Perez*, 501 F. Supp. 2d at 1381 ("These benefits to Defendants approximately 40 million customers—when viewed against the backdrop of all of the uncertainties, risks, and problems that have surfaced in this litigation . . . and the reasonable possibility that Plaintiffs would not have recovered anything if they had proceeded to trial—weigh heavily in favor of approving this Settlement.").

The Settlement is reasonable. In fact, the Court has already found that the Settlement was "within the range of reasonableness and possible judicial approval." [ECF No. 119] at 7. Given the Parties' respective positions, the limited amount of transfers to SHPC, SHPC's settlement with

the Corporate Monitor for a significant portion of the allegedly commingled funds SHPC held, and

the expenses and time required to prove disputed liability and damages, the Court finds that the

Settlement represents an outstanding result for the Class, without the risk of trial and appeals and

the associated delay of both.

> **6.**    **Class Counsel Evaluated the Strengths and Weaknesses of Their Claims, Class Counsel Support Approval of This Settlement, and There is No Opposition from the Class (*Bennett* Factor).**

The endorsement of well informed, experienced class action attorneys is strong support for

the final approval of a settlement. *Warrant v. City of Tampa,* 693 F.Supp. 1051, 1060 (M.D. Fla.

1988).  A court should give great weight to the recommendations of counsel for the parties, given

their considerable experience in the litigation. *Id.*; *see also In re Domestic Air Transp.*, 148 F.R.D.

297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the

Court is entitled to rely upon the judgment of the parties' experienced counsel.  The trial judge,

absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of

counsel.") (internal quotations omitted); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F.Supp. 660, 672

(M.D. Ala. 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially

in favor of this settlement as presently structured, this Court is certain that they would not have

signed their names to the settlement agreement").  Class Counsel is well apprised of the strengths

and weaknesses of the Class's claims.  Relying on their knowledge of the strengths and weaknesses

of this litigation, Class Counsel collectively and unequivocally believe that this Settlement is in

the best interests of the Class.

Furthermore, "in determining whether a proposed settlement is fair, reasonable and

adequate, the reaction of the class is an important factor."  *Lipuma*, 406 F. Supp. 2d at 1324.

"Obviously, a low number of objections suggests that the settlement is reasonable, while a high

number of objections would provide a basis for finding the settlement was unreasonable."  *Lee v.*

*Ocwen Loan Servs.,* No. 14-CV-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (internal quotations omitted); *Gavaerts v. TD Bank, N.A.,* No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *8 (S.D. Fla. Nov. 5, 2015) ("[T]he Court also finds it telling that of the 1,122 Settlement Class Members, none objected to, or opted out of, the Settlement."). Here, no Settlement Class Member objected to the Settlement and only twenty-two opted out of it. *See* [ECF No. 131-1] ¶¶ 7–8. The Court finds that the reactions of Settlement Class Members confirm that the Settlement is fair, adequate, and reasonable.

### 7.    The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims (Rule 23(e)(2)(C)(ii)), and the Proposal Treats Class Members Equitably Relative to Each Other (Rule 23 (e)(2)(D)).

Courts have concluded that where the settlement terms apply equally to all Settlement Class Members, the "method of distributing relief to the class" will effectively benefit every member of the Class and treat them equitably relative to each other. *Gumm v. Ford*, No. 5:15-CV-41-MTT, 2019 WL 479506, at *6 (M.D. Ga. Jan. 17, 2019). Here, each Settlement Class Member will receive a pro rata share of the Settlement Fund, based on each Class Member's investment. Accordingly, all Settlement Class Members are treated substantially equally, and the Court finds that this factor weighs in favor of a finding that the Settlement is fair to and adequate for all Settlement Class Members.

### 8.    The Terms of the Proposed Award of Attorneys' Fees, Including Timing of Payment (Rule 23(e)(2)(C)(iii)), Favor Granting Final Approval.

Rule 23 requires a district court to assess "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). There are no "rigid limits" on attorneys' fees but "the relief actually delivered to the Class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23 Advisory Comm.'s Note, 2018 amend.

"[A]ttorneys' Fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the Class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991).  "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.*  Therefore, "[t]he district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Waters v. Cook's Pest Control, Inc.* No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *15 (N.D. Ala. July 17, 2012) (internal quotations omitted).  Nevertheless, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.*

Here, Class Counsel requested $195,000.00 or 30% of the Settlement Fund for attorneys' fees, an amount to which SHPC does not object.  The Parties negotiated attorneys' fees only after reaching agreement on all other material terms of the Settlement.  The payment of those fees is contingent upon the Court's granting final approval of the Settlement.  The Settlement Agreement in this case provides relief to the Settlement Class Members, and Class Counsel is entitled to attorneys' fees under RICO and applicable case law.  *Camden I*, 946 F.2d at 774.  Furthermore, considering the effort spent and risk taken by Class Counsel, an award of 30% of the common fund is below other attorneys' fees awards in this jurisdiction.  *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257–58 (S.D. Fla. 2016) (awarding 33% attorneys' fees); *In re Managed Care Litig. v. Aetna,* No. MASTER00-1334-MD-MOR, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding 35.5% attorneys' fees); *Cook's Pest Control, Inc.*, 2012 WL 2923542, at 18 (awarding

35% attorneys' fees).  Accordingly, the Court finds that Class Counsel's request for attorneys' fees weighs in favor of a finding that the Settlement Agreement is fair to and adequate for the Settlement Class Members.  Thus, the Court finds this factor weighs in favor of final approval of the Settlement.

> **9.**     **Agreements Made in Connection with the Proposed Settlement (Rule 23(e)(2)(C)(iv)).**

Rule 23 requires the parties to file with the Court "a statement identifying any agreement made in connection with" a proposed settlement.  Fed. R. Civ. P. 23(e)(3).  The Court finds there are no other agreements with SHPC other than the Settlement, which weighs in favor of a finding that the Settlement Agreement is fair and adequate.

> **B.**     **THE COURT APPROVES CLASS COUNSEL'S FEE REQUEST.**

> **1.**     **Class Counsel is Entitled to Compensation for Creating a Common Benefit for the Class.**

Attorneys who create a common fund or benefit for a group of persons are entitled to their fees and costs based on the common benefit achieved.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole.").  This exception to the general rule that all parties are to bear their own costs "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense."  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) (quoting *Boeing*, 444 U.S. at 478).  "Furthermore, courts have also recognized that in order to encourage 'private attorney general' class actions brought on behalf of persons with small individual losses, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases for which they may never be paid."  *Id.* Appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes

of persons and deter future misconduct of a similar nature.   *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).   Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O' Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985).

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."   *Camden I*, 946 F.2d at 774.   In *Camden I*—the controlling authority in this circuit regarding attorneys' fees in common-fund class actions—the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.   Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."   *Camden I*, 946 F.2d at 774.   Courts in this Circuit have applied the percentage of the fund approach, holding:

> Even before *Camden I*, courts in this Circuit recognized that 'a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases.' *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 670 (M.D. Ala. 1988). More importantly, the Court observed first hand the monumental effort exerted by Class Counsel in this case, and does not need to see timesheets to know how much work Class Counsel have put in to reach this point.

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2001).

The Court has substantial discretion in determining the appropriate fee percentage.   "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each

case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I,* 946 F.2d at 774). Therefore, "[t]he district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Cook's Pest Control, Inc.*, 2012 WL 2923542, at *15 (internal quotations omitted). In making the determination, courts are guided by a number of non-exclusive guidelines. *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1359. Nevertheless, "[t]o avoid depleting the funds available for distribution, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Cook's Pest Control, Inc.*, 2012 WL 2923542, at *15 (internal quotations omitted). Here, the Court finds that Class Counsel's request for fees of 30% of the $650,000.00 Settlement Fund is reasonable and appropriate.

## 2.      Application of the *Camden I* Factors Supports the Requested Attorneys' Fees.

The Eleventh Circuit in *Camden I* provided a set of factors the Court should use to determine a reasonable percentage of the fund to award class counsel: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of the other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

These twelve factors are guidelines and are not exclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case."  *Id.* (internal quotations omitted).  Here, the Court finds that all of the *Camden I* factors support approval of Class Counsel's requested fees.

> **(a)**　　**The Claims Against SHPC Required Substantial Time and Labor (Factor 1).**

Class Counsel expended considerable time and effort over the past year in prosecuting and settling the claims at issue in this lawsuit.  *See* [ECF No. 123-1].  Class Counsel conducted a thorough investigation and analysis of the Class's claims.  Class Counsel's review of that investigation, including the limited number of transfers made to SHPC by the SH Enterprise, made counsel's settlement negotiations well informed.  *See Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation.").  Class Counsel was also well-positioned to evaluate the strengths and weaknesses of the Class's claims, as well as the appropriate basis upon which to settle them, as a result of work on this case from inception.

The hours worked by Class Counsel are a reflection of the time and labor required to prosecute and settle Class Members' claims.  Counsel first investigated the practices of Defendants, including the transfers to SHPC, and analyzed available legal theories of recovery, including interviewing numerous Class members and other witnesses to gather information about

Defendants' conduct, both at the time the lawsuit was filed and in the pre-filing period. This information was essential to Class Counsel's ability to understand the nature of Defendants' conduct and potential remedies. Class Counsel also expended significant resources researching and developing the legal claims at issue.

Class Counsel worked more than 876 hours for which Class Counsel has not been compensated and will continue to work throughout this process until the settlement is effectuated. *See* [ECF No. 123-1]. And, the Class's recovery is a direct result of Class Counsel's efforts and expenditure of resources. Accordingly, the Court finds that this factor weighs in favor of the requested fee award.

> **(b)** **The Issues Involved in this Case were Novel and Difficult (Factor 2), Making it Viewed as Undesirable (Factor 10), and Requiring the Skill of Highly Talented Attorneys (Factor 3).**

A higher fee award is favored where there are "complex issues requiring experience and skill on the part of Class Counsel." *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *4 (W.D. La. Oct. 31, 2006). Difficult issues in a case also often contribute to the undesirability of a case. *Id.* at *6 (finding undesirability due in part to issues such as "problems of proof, problems of causation, and a host of other complex issues"); *see also Cook's Pest Control, Inc.*, 2012 WL 2923542, at *18 (finding undesirability due to complex discovery issues, along with "the expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery"). "Counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1364.

This litigation presented complex legal issues regarding RICO, Florida RICO, and the Florida Securities and Investor Protection Act that centered on the Class members' investments in promissory notes. Specifically, the claims with SHPC were complicated because SHPC was

owned by SHPC Holdings and was the collateral used by its principals, SH&S, for the acquisition of insurance companies for the "Seeman Holtz Family of Companies." SHPC was in default, and the lender foreclosed on the loan. Thus, the claims against SHPC entailed a greater degree of complexity than the claims against other Defendants in this action.

The complex legal issues involved impacted the desirability of taking on this lawsuit. Other than the Corporate Monitor's counsel, no other law firm has undertaken the risk to bring this or a similar action and tackle these difficult issues against Defendant SHPC. Absent the diligence, care, and expertise of Class Counsel, Defendant SHPC could have prevailed at multiple junctures in this litigation.

Furthermore, in evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. *See Camden I*, 946 F.2d at 772, n.3; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). SHPC has been represented by extremely capable counsel from the prominent national law firm of Kobre & Kim LLP. These were highly competent adversaries. *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). The Court finds that these factors, therefore, weigh in favor of the requested fees.

### (c)   Class Counsel Attained an Excellent Result for Class Members (Factor 8).

The Court finds that the significant monetary relief Class Counsel obtained for Settlement Class Members favors the requested fee award. It is especially significant that Class Counsel achieved a common fund, which is "a substantial, tangible, and real benefit for the Class." *See Wolff v. Cash 4 Titles*, 03-22778-CIV, 2012 WL 5290155, at *3 (S.D. Fla. Sept. 26, 2012), report and recommendation adopted, 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012)

("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of 'coupons', Class Counsel here created a wholly cash common fund.").

The $650,000.00 Settlement Fund is an unqualified success. The fund represents a substantial recovery of the net proceeds transferred to SHPC, particularly given that the Corporate Monitor settled with SHPC immediately prior to the Settlement at issue here. Because of Class Counsel's efforts, thousands of Class Members will be able to recover a portion of their losses from those transfers to SHPC. The Court finds that because Class Counsel obtained this significant relief despite substantial financial risks, this factor supports the requested fee award.

### (d) Class Counsel Assumed Considerable Risk to Bring this Action on a Contingent Basis (Factor 6), Which Precluded Other Employment (Factor 4).

Class Counsel took a risk in prosecuting this action entirely on a contingent fee basis. Attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) (internal quotation omitted). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1364; *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). This is particularly the case when the law firms prosecuting the case are of the size of some of Class Counsel's firms, especially where the time devoted to the class action precludes other employment. *See In re Bayou Sorrel Class Action*, 2006 WL 3230771, at *5 (awarding 36% fee based in part on the reasoning that due to the small size of class counsel, it lost "the time and opportunity they would have had available to accept other employment").

Without the "bonus" from a contingency fee arrangement, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money,

especially in light of the risks involved in recovering nothing." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1365 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990)).  For instance, in *Wolff v. Cash 4 Titles*, the court awarded 33.3% of the settlement fund where class counsel's "risk was magnified by the fact that, unlike some class actions, th[e] case was a full, not partial, contingency fee case."  2012 WL 5290155, at *2.  There, the court noted that there was no guarantee of class counsel receiving their hourly rates or reduced hourly rates for their efforts in the litigation and there was no hybrid contingent fee negotiated guaranteeing counsel even a minimum amount of fees and costs.  *Id.*  Similarly, in *Cook's Pest Control*, the court found this factor supported the approval of a 35% fee award because class counsel accepted the matter on a contingent basis, incurred significant expense in prosecuting the action, and received no compensation.  2012 WL 2923542, at *17.

Here, Class Counsel incurred substantial risk given the fully contingent nature of the fee, Class Counsel's wholly contingent outlay of costs, and the high risk of failure and nonpayment. Additionally, Class Counsel incurred unreimbursed expenses in litigating on behalf of the Class, none of which would have been recovered if the case were not successfully concluded.  From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the Class and, hence, no compensation.  Class Counsel took the risk that Defendants would prevail at the motion to dismiss stage, the class certification stage, or the summary judgment stage.

Furthermore, the hours spent on this case detracted from work on other potential cases. Class Counsel put off other matters, outsourced work, and declined cases they would otherwise have pursued but for the efforts toward this case.  Although Class Counsel successfully resolved this part of the litigation, this result was not foreseeable at the outset; rather, the contingency risks

were substantial, and success was by no means assured.  The Court finds that these factors support

the reasonableness of Class Counsel's fee request.

**(e)      The Requested Fee is Lower than Awards in Similar Cases
(Factor 12).**

The fee sought here by Class Counsel—30% of the Common Fund—is at or below the fee

typically awarded in similar cases.  Numerous decisions have found that a thirty percent fee is well

within the range of a customary fee.  *See e.g.*, *Sunbeam,* 176 F. Supp. 2d at 1333–34.  Several

recent decisions in this circuit award attorneys' fees up to or in excess of thirty percent, confirming

the fairness and reasonableness of the thirty percent fee requested here by Class Counsel.  *See e.g.*,

*In re Managed Care Litig v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)

(awarding 35.5%); *Cook's Pest Control, Inc.*, 2012 WL 2923542, at *18 (awarding 35%); *Wolff*,

2012 WL 5290155, at *7 (awarding 33.3%); *In re: Terazosin Hydrochloride Antitrust Litig.*, No.

99-1317-MDL-Seitz, ECF No. 1557 (S.D. Fla. Apr. 19, 2005) (awarding 33.3%); *Gutter v. E.I.*

*Dupont De Nemours & Co.*, No. 95-2152-CIV-Gold, ECF No. 626 (S.D. Fla. May 30, 2003)

(awarding 33.33%); *Tapken v. Brown*, No. 90-691-CIV-MARCUS, ECF No. 362 (S.D. Fla. Feb.

28, 1995) (awarding 33%).   Accordingly,  the  Court  finds  that  this  factor  supports  the

reasonableness of Class Counsel's fee request.

**(f)      The Requested Fee is Lower than the Customary Fee for
Similar Services in the Market (Factor 5).**

The Court finds that the requested fee is reasonable when considering what the customary

fee  would  be  for  similar  services  in  the  market.   The  Court  considers  the  market  rate  when

determining fee awards to class counsel.  *See Wolff*, 2012 WL 5290155, at *4.  "[C]lass counsel

are entitled to the fee they would have received had they handled a similar suit on a contingent fee

basis, with a similar outcome for a paying client."  *Id.* (quoting *In re Cont'l Ill. Sec. Litig.,* 962

F.2d 566, 572 (7th Cir. 1992)).  Class Counsel's fee request falls within the range of the private

marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.,* 818 (MBM), 1992 WL 210138, at *7, (S.D.N.Y. Aug. 24, 1992) ("[W]hat should govern [fee] awards . . . what the market pays in similar cases.").

And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring); *see also Kirchoff v. Flynn,* 786 F.2d 320, 323 (7th Cir. 1986) (noting "40 percent is the customary fee in tort litigation"); *In re Public Service Co. of New Mexico,* 91-0536M, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *In re Pearlman*, 6:07-BK-00761-KSJ, 2014 WL 1100223, at *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("[T]he Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates."); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1366 n.35 (noting that contingency fees of up to 40% are customary in the private marketplace). The Court finds that the record here leaves no doubt that Class Counsel's fee request is appropriate and comports with attorneys' fees awarded in similar cases and earned in the private marketplace.

### (g)    The Professional Skill and Standing of Counsel Support the Requested Fee Award (Factor 9).

The Court finds the requested fee is reasonable given Class Counsel's professional skill and expertise, which has served the Class well in this litigation. The Court should consider the "experience, reputation, and ability of the attorneys" in determining a fee award. *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1359; *see also Gevaerts v. T.D. Bank,* 1:14-CV-

20744-RLR, 2015 WL 6751061, at *12 (S.D. Fla. Nov. 5, 2015) ("In the private marketplace, counsel of exceptional skill commands a significant premium. So too should it here.").

Here, Class Counsel are qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions.  Class Counsel have not only successfully tried class actions to jury verdicts and defended those verdicts in the appellate courts but have also obtained billions of dollars in settlements for classes throughout the United States.  Defendants' Counsel, moreover, required Class Counsel to maintain the highest quality of representation to reach the point of settlement.  The Court finds that this factor weighs in favor of the requested fees.

### (h)    The Remaining *Camden I* Factors (Factors 7 and 11) Also Favor Approving the Requested Fee.

The Court also finds that the remaining *Camden I* factors support granting Class Counsel's fee request.  As noted above, the burdens of this litigation foreclosed Class Counsel's pursuit of other work; the relatively small size of the firms representing the Class and the major commitment required of all the law firms involved precluded Class Counsel from working on other cases and accepting other representations.  Moreover, without adequate compensation and financial reward, cases such as this simply could not be pursued.  As a court in this circuit previously found in *In re: Checking Account Overdraft Litigation,* in which several of the lawyers in this matter served as counsel for plaintiffs, "given the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized.  The Court believes, and holds, that the proper incentive here is a 30% fee." 830 F. Supp. 2d at 1364.  This Court agrees.

3.      **The Claims Presented Serious Risk.**

The Settlement here is particularly noteworthy given the combined litigation risk.  SHPC had substantial defenses to the Class's claims, which carried serious risk to the Class that the Class's recovery could be lower than the Settlement agreed to by the Parties.  SHPC was represented by experienced and talented trial lawyers and therefore the Class had no guarantee of success at trial.  The Court finds that success under these circumstances represents a genuine milestone and further supports the reasonableness of the fee request.

4.      **The Lodestar Cross-Check Supports a Finding that Class Counsel's Fee Request is Reasonable.**

Courts in this circuit may use the lodestar method as a cross-check of the percentage of the fund approach, although they are not required to do so.  *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1298 (11th Cir. 1999); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1343–44 (S.D. Fla. 2007).  "In a pre-*Camden I* case, the Court performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multipliers 'in large and complicated class actions' range from 2.26 to 4.5, while 'three appears to be the average.'  In many cases, including cases in this jurisdiction, multiples much higher than three have been approved."  *Pinto*, 513 F. Supp. 2d at 1344 (quoting *Behrens*, 118 F.R.D. at 549).  Class Counsel spent more than 876 hours, equal to roughly $584,500 in fee time; the requested fee is only a fraction of the fee time Class Counsel expended in this matter.  The Court finds the requested fee is below the average multiplier, though the result here is significantly above average.

C.      **THE COURT APPROVES REIMBURSEMENT OF CLASS COUNSEL'S LITGATION EXPENSES.**

"Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class."  *Waters*, 190 F.3d at 1298 (internal quotation and citation

omitted); *Gevaerts*, 2015 WL 6751061, at *14 (awarding costs and expenses for, *inter alia*, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses").

Class Counsel seeks reimbursement for a total of $3,663.23 in litigation costs and expenses. These sums correspond to actual out-of-pocket costs and expenses Class Counsel necessarily incurred in connection with the prosecution and settlement of this lawsuit. The Court finds that all of these out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this lawsuit. Neither Defendants nor any Settlement Class Members oppose reimbursement of these costs and expenses. Accordingly, the Court approves reimbursement of Class Counsel's litigation expenses in the amount of $3,663.23 to be paid from the Common Fund.

## III.   <u>CONCLUSION</u>

Based on the foregoing it is hereby **ORDERED AND ADJUDGED** as follows:

(1)    The Class's Unopposed Motion for Final Approval, [ECF No. 131], is **GRANTED**, and the Settlement is **APPROVED**;

(2)    The Class's Unopposed Motion for Attorneys' Fees and Costs, [ECF No. 123], is **GRANTED,** and the Court **APPROVES** an award of attorneys' fees to Class Counsel in the amount of $195,000.00, and **APPROVES** reimbursement of Class Counsel's litigation expenses in the amount of $3,663.23, all to be paid out of the Common Fund.

**DONE and ORDERED** in Miami, Florida this 30th day of December, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**